### ARCHER v. BEIHL.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1905.)

No. 1,087.

1. ADVERSE POSSESSION—COLOR OF TITLE—PLEADING.

Where, in ejectment, defendant alleged title under a quitclaim deed from S., specifically describing the property, and alleged that said parcel "is a part of the identical property which is the subject of controversy in this action," and that, since the original entry on the lot by F., he and his grantees, of whom S. was one, had been in quiet, uninterrupted, open, and notorious possession thereof, etc., the answer sufficiently alleged that defendant claimed the land under the deed as color of title.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Adverse Possession, §§ 646–650.]

2. SAME.

Where a quitclaim deed was claimed to have conveyed the property in controversy to defendant, and possession of at least a portion of the land in controversy was taken under the deed, it was sufficient to give color of title, though there was nothing contained therein showing that the grantor claimed any interest in the property at the date of its execution.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Adverse Possession, §§ 415–427.]

3. SAME—INSTRUCTIONS.

Where, in ejectment, defendant claimed under a quitclaim deed as color of title, and it was impossible under any construction of the deed

136 F.—8

to make its description fit the premises involved in the action, it was error for the court to permit the jury to find for defendant for the whole of the property in controversy.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Adverse Possession, §§ 463, 464.]

4. SAME—EVIDENCE.

Where, in ejectment, defendant claimed by adverse possession, under a quitclaim deed, as color of title, it was error for the court to charge that the jury might find, from the bare fact that defendant testified that at the time he received the deed the grantor put him in possession, that the grantor at that time "had some right title or interest in the land, such as actual possession," and that defendant "did obtain some sort of title thereto by his acts and the surrender of possession by the other parties."

In Error to the District Court of the United States for the First Division of the District of Alaska.

The plaintiff in error and the defendant in error were respectively the plaintiff and defendant in the court below, and they will be designated by the latter terms in this opinion. The plaintiff brought an action of ejectment against the defendant to recover the possession of a portion of lot 1 in block 2 in the town of Douglas City, on Douglas Island, Alaska, described as follows: Beginning at a point on the north boundary line of B street, 150 feet northeasterly from the corner of said block No. 2 at the intersection of B and Fourth streets; thence northwesterly at right angles to B street across said lot 1, block 2, 50 feet; thence along the north boundary line of said lot in a southwesterly course toward Fourth street, 25 feet; thence at right angles to the last course, 50 feet, to B street; thence along the south boundary line of said lot to the place of beginning. The defendant answered, denying that the plaintiff ever at any time owned, occupied, or possessed the said premises, and alleging that in May, 1886, one Joseph Farnsworth entered the ground so described as lot 1 in block 2, which was at that time unoccupied, unpossessed, and unappropriated public land of the United States; that he caused certain improvements to be made on said lot according to the local rules and regulations made by the citizens of Douglas City, and caused a notice of his location to be recorded in the office of the local recorder of said town; that on November 19, 1886, he sold and transferred said lot to Wm. Nelson; that on February 24, 1890, said Nelson conveyed the same to Peter Roblin; that on March 3, 1895, said Peter Roblin conveyed the same to Mary A. Sakaloff; that prior to said last-named date, to wit, on May 5, 1894, the said Mary A. Sakaloff and her husband quitclaimed to the defendant, by a proper instrument in writing, a certain portion of lot 1, block 2, "being 25 feet in length and fronting toward the beach on Gastineaux Channel, together with the one-story frame building situated thereon," and that said parcel "is a part of the identical property which is the subject of controversy in this action." The answer further alleged that, ever since the original entry of said lot by Joseph Farnsworth, he and his grantees have been in the quiet, uninterrupted, open, exclusive, and notorious possession thereof up to the time of the said conveyance to the defendant, and the defendant ever since said last-named date has been in the quiet, uninterrupted, open, notorious, and adverse possession of the said property, and has made valuable improvements thereon of the value of $1,000, and that he is now the owner and in possession of all of said 25 by 50 feet of said lot 1 in block 2, together with the improvements thereon. The defendant in his answer expressly disclaimed any interest in or title to any part of the premises described in the complaint, "excepting the land conveyed to him by Mary A. Sakaloff and her husband." On the trial of the cause before a jury the plaintiff introduced in evidence a quitclaim deed from Wm. Nelson to Peter Roblin, of date February 24, 1890, quitclaiming all of lot No. 1 in block No. 2 in Douglas City, Alaska, according to the plat of said town made by Geo. W. Garside; a quitclaim deed from Peter Roblin to Mrs. Mary A. Sakaloff, of date March 3, 1895, quitclaiming the same property; a quitclaim deed

from Mary A. Sakaloff to Emery Valentine, dated April —, 1897, quitclaiming the south 150 feet of said lot No. 1 in block No. 2; and a quitclaim deed from Emery Valentine and wife to Sarah Archer, of date June 12, 1897, quitclaiming the premises described in the deed last above mentioned. The plaintiff introduced also the evidence of Geo. W. Garside, the original surveyor of the town of Douglas City, who testified that the lines of Fourth street and B street run, according to the true meridian, very nearly northeast and southwest; and in connection with his testimony the plaintiff introduced in evidence a plat of the said block 2, showing that lot 1 was fractional, and did not include a triangle used for a saw mill site, marked by a line drawn from the point of junction of lots 1 and 2 on Third street to a point on B street some 20 or 25 feet northeast from the point of beginning

of the description of the tract in controversy, as set forth in the complaint. The plaintiff introduced also the evidence of M. B. Archer, her husband, who testified that when the plaintiff purchased from Mrs. Sakaloff she was put in possession of a house on the south end of said lot; that the defendant's house stood on the north end of said lot, partly on the lot and partly on B street, and that about one-half of said house was in the street; that about January, 1900, the defendant constructed a kitchen at the rear of his house on a portion of the lot covered by the plaintiff's deed; that the witness notified the defendant that he was on the plaintiff's ground, but that the defendant then stated that his deed "also covered 50 feet southerly from the intersection of the line of the mill site." He further testified that there was only about 20 or 25 feet between the mill site and the north end of plaintiff's ground, and that, measured along the line of lot 2, there was 50 feet of ground in lot 1 north of plaintiff's ground.

The defendant introduced a quitclaim deed to himself from Mary A. Sakaloff and husband, dated May 5, 1894, quitclaiming "25 feet in width and fronting north toward the beach and 50 feet in depth and being the northeast corner of Lot No. 1 in Block No. 2 as per plat of survey of said town of Douglas surveyed by Geo. W. Garside together with the one story frame

building and annexes thereto situated upon the above described premises." The defendant testified that at the time when he received said deed he was put in possession by the grantor of the ground in controversy, and had held such possession ever since. To this testimony the plaintiff objected, for the reason that the defendant in his answer had relied on his deed from Mary A. Sakaloff, and had pleaded no title by prior possession. The court overruled the objection, to which ruling the defendant excepted. The defendant further testified that the house on the north end of the lot referred to in his deed is partly on the ground in controversy. The court, in charging the jury, gave instructions, some of which were excepted to, and refused to give certain instructions requested by the plaintiff, to which the plaintiff excepted. The jury returned a verdict for the defendant, and judgment was rendered thereon for the defendant for the whole of the property in controversy. Among other instructions the court gave the following: "If you find that the deed from the Sakaloffs to Beihl conveyed a strip of land 25 feet in width across said lot, by 50 feet along the length of said lot, running from the northerly end thereof in a southerly direction, and that the buildings of Beihl are within the exterior boundaries of such piece or parcel of land, and that his rights are older, both as to the conveyance and possession, then you should find for the defendant, so far as that matter is controlled by the conveyance. * * * If you find by the weight and preponderance of the evidence that the defendant had been in quiet, adverse, uninterrupted, and notorious possession of said strip of land 50x25 feet, a part of said lot in dispute in this case, under color and claim of title, for seven years or more prior to the bringing of this action, then his title thereto is conclusively clear against all persons except against the United States, and you should so find. * * * If you find from the evidence in this case that at the time of making said deed by the Sakaloffs to Beihl the Sakaloffs had some right, title, or interest in said land, such as actual possession, and they surrendered their possession and right of possession, and any buildings that might be thereon, to the said Beihl for a consideration, then the said Beihl did obtain some sort of title thereto by his acts and the surrender of possession by the other parties." To all of which instructions the plaintiff excepted, and he now assigns the same as error.

Malony & Cobb and Alfred Sutro, for plaintiff in error.

Z. R. Cheney and Lorenzo S. B. Sawyer, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

This record comes to us in a very unsatisfactory condition. The statement of the evidence in the bill of exceptions is terse in the extreme, and affords but meager information of the facts. There is no definite testimony as to the location of the house or lot, the possession of which was surrendered to the defendant by Mary A. Sakaloff. There is no testimony that that tract which in the deed to the defendant was described as a parcel 25 feet by 100 was ever pointed out to the defendant, or was inclosed or in any way marked on the ground, or that the defendant ever actually or visibly occupied any precise tract of ground by using the same or marking the same or exercising acts of ownership over it. The deed under which the plaintiff claims from Mary A. Sakaloff is the south 150 feet of lot 1. There is no difficulty in determining the location of the premises so conveyed. They include the land in controversy. The quitclaim deed under which the defendant claims was made a year before Mary A. Sakaloff had acquired any title or right of possession of record. It quitclaimed a parcel "25 feet in width front-

ing north toward the beach and 50 feet in depth and being the northeast corner of Lot 1." It is impossible from this description to determine where the ground so intended to be quitclaimed is located. Where is the northeast corner of lot 1? The surveyor who laid out the ground testified that according to the plat the northeast corner was the inside corner next to lot 2, but that according to the variation of the compass it would be the corner next to B street. The wording of the deed would seem to indicate that the ground was located in the corner next to lot 2, for it is described as a tract 25 feet in width "fronting north toward the beach." Again, if it was intended to be, as the defendant contends, in the corner fronting B street, in what shape did it lie? If it is in that corner, and effect is given to the words "25 feet in width fronting north toward the beach," it was either a tract 25 feet in width, beginning at the point of intersection of the mill site with the line of B street, and running 50 feet southwesterly along B street, or a tract 25 feet in width on B street, immediately south of the point where the mill site intersects the line thereof, and running 50 feet across lot 1. In the latter case the defendant's ground as described in the quitclaim deed would not encroach on the plaintiff's ground more than 5 feet, if at all. In the former case it would not encroach on more than half of the plaintiff's ground. If it be admitted that the house situated on the premises described in the deed to the defendant is to be deemed a monument to identify his land, we are met by the difficulty that the evidence did not show the location of the house further than that it was partly on lot 1 and partly in B street, and that now, after an addition has been made thereto, it is partly on the ground in controversy. For aught that appears to the contrary, the original house, so far as it was situated on lot 1, was on that portion thereof lying north of the land in controversy. This would seem to be borne out by the fact that it was not until the defendant began to build his addition that the plaintiff complained of encroachment, and the further fact that the disseisin complained of in the complaint was alleged to have occurred at about that time. But whatever may have been the true location of the land quitclaimed to the defendant, according to the intention of the parties, it is very clear that the defendant's deed does not describe the tract in controversy in the action, and could not by any construction cover more than a portion thereof. The defendant in his answer did not allege adverse possession of the property in controversy in any of his grantors. He alleged such adverse possession in himself only from May 5, 1894. While it is true that, under the law which was in force in Alaska prior to the Code, color of title was not necessary to render actual possession under claim of title adverse, section 1042 of the Code of Civil Procedure of Alaska declares that "the uninterrupted, adverse, notorious possession of real property under color and claim of title for seven years or more shall be conclusively presumed to give title thereto except as against the United States." The plaintiff objected to that portion of the charge which permitted the jury to find adverse possession in the defendant upon the ground that the answer had not pleaded that such pos-

session was had under color and claim of title. We think that, taking all the averments of the answer together, it sufficiently appears that the claim of adverse possession to at least a portion of the land in controversy was made under the deed of Mary A. Sakaloff to the defendant of May 5, 1894, and there is no doubt that that deed was sufficient to give color of title, notwithstanding the fact that at the date of its execution there is nothing to show that the grantor therein had or claimed any interest in the premises. But the question is, to what precise tract of land does that deed give color of title? A deed is color of title only as to the land actually described in it. "Any description which, unaided by extrinsic facts, satisfies the mind that the land adversely occupied is embraced within the description contained in the deed, will, of course, be sufficient. So a description, though indefinite, is sufficient if the court can, with the aid of extrinsic evidence which does not add to, enlarge, or in any way change the description, fit it to the property conveyed by the deed. It is necessary, however, that the description be such that it can be rendered certain by such evidence." 1 Cyc. 1090, and authorities there cited.

The instructions of the court permitted the jury to find for the defendant for the whole of the property in controversy. This was error, for it is impossible, under any construction of the defendant's quitclaim deed, to make its description fit the premises which are involved in the action, and this is true no matter where along the line of B street the defendant's house may have been located. It was error, also, to instruct the jury that they might find, from the bare fact that the defendant testified that at the time of receiving his quitclaim deed Mrs. Sakaloff put him in possession, that at that time the latter "had some right, title, or interest in said land such as actual possession," and that the said defendant "did obtain some sort of title thereto by his acts and the surrender of possession by the other parties."

It is not necessary to consider the other assignments of error, since for these erroneous instructions the judgment must be reversed and the cause remanded for a new trial.