PACIFIC COAST CO. v. JAMES.

(First Division.  Juneau.  October 26, 1914.)

No. 1024–A.

1. NAVIGABLE WATERS ⬩36(3)—TIDELAND—ABANDONMENT.
    In 1882 plaintiff erected a T-shaped wharf extending out from the shore in front of Juneau, and used the same for landing its boats and vessels until 1894, when and always thereafter it abandoned the site, and the same was unoccupied and in a state of nature. In 1900 the defendant entered upon said tideland so formerly occupied by plaintiff, and improved it, and has ever since used and occupied it, without let or hindrance, until this suit was brought. Plaintiff claims right of possession under Act May 17, 1884, c. 53, § 8, 23 Stat. 24, providing "that Indians and other persons in said district shall not be disturbed in the possession of any lands actually in their use or occupation or now claimed by them," etc. *Held*, the act does not prohibit the persons mentioned therein from transferring the title thereto, or abandoning the same; that plaintiff did so abandon all claim or occupancy of said land before defendant entered thereon. Findings ordered for the defendant.

2. ADVERSE POSSESSION ⬩70—COLOR OF TITLE.
    Color of title is that which purports to be title, but is no title. It is not title, but only the semblance of title. It must be in form a conveyance of title. One cannot make his own title. A location notice is not a conveyance; it is a mere claim.

In 1881, a man by the name of M. W. Murry filed a location notice, on a wharf site on the Juneau water front, and shortly afterwards the miners in and around Juneau passed a resolution approving the location. In 1881 the construction of a wharf was begun, and in 1882 the wharf was completed.

There is no evidence that Murry built the wharf, or had anything to do with its building, or that any consent from Murry was obtained. In fact, Murry seems to have vanished for several years, and it was only in 1898 that plaintiff acquired whatever rights Murry had, if, indeed, he had any.

Certain it is, however, that in 1882 the plaintiff went into use and occupation of the wharf, and in the absence of any evidence to the contrary it must be presumed that plaintiff owned said wharf, and used and occupied—that is, possessed— it, in its own right. The wharf was built in the shape of a T, the stem of which extended from the upland out to deep water, with a face at deep water. The plaintiff was engaged in the transportation business between Seattle and Juneau, and was operating such steamers as the Idaho, the Ancon, the Queen, etc. The steamers operated by the company were much too long for the face of the dock, so that it was necessary, in rough weather, while a vessel was to lie at the face of the dock, to moor the bow and stern of the vessel by lines running therefrom to the shore. Whether these lines were fastened to stumps or boulders on the shore, or to a pile at low water, the evidence is not very satisfactory; but I think it is clear that a space of at least 250 to 300 feet on each side of the center line of the wharf was a necessary adjunct to the use and enjoyment of the wharf as a landing place for such vessels as were operated by the plaintiff.

In 1892 the plaintiff built another wharf nearer the town of Juneau—in fact, in the town—and from 1894 landed its vessels entirely at this new wharf. The evidence is that only one of plaintiff's vessels, to wit, the Alki, was docked at the old wharf after 1894. The Alki docked there in 1895. But there is no evidence that she was moored by bow or stern lines running to the shore, fastened upon or over the property in dispute. The old wharf was allowed to fall into unrepair and disuse. The structures near the upland were converted into a sardine factory, a glove factory, and a tenement house. There is no evidence that, after the plaintiff moved to the new wharf, it used or occupied the premises in dispute for any purpose whatsoever.

In 1894, then, the plaintiff ceased to use or occupy, for any purpose whatsoever, any part of the tidelands in controversy. A period of six years now elapses, during which the said tide-

lands remained in a state of nature; no improvements thereon; no occupancy; no sign of occupancy; no use made of them by any one; no act of ownership performed by any one. There is no evidence that plaintiff renounced its claim; i. e., it did not say in words, "I no longer claim;" but there is every evidence that it abandoned, forsook, ceased to use, improve, or care for the tideland.

Shackleford & Bayless, of Juneau, for plaintiff.

Gunnison & Robertson, of Juneau, for defendant.

JENNINGS, District Judge. What, then, was the legal status in 1900 of the tideland in controversy?

Plaintiff claims that it then belonged to it. The basis of plaintiff's claim is this:

(a) Plaintiff claims that the land in dispute belonged to it because by the act of May 17, 1884, it was provided that Indians or others should not be disturbed in the possession of lands then in their actual use or occupation, or claimed by them.

One may use or occupy lands and yet not claim them; one may claim lands and yet not use or occupy them. I think the last "or" in that statute must be read as "and," for certainly it is unthinkable that Congress intended that a person was ever afterwards to be protected, on account of the fact that in 1884 he claimed a piece of land. In the case of Sutter v. Heckman, 1 Alaska, 188, 199, Judge Brown, formerly of this court, said:

"It is believed that the language used in the act of Congress of May 17, 1884, 'used or occupied,' limits the following words, 'or claimed by them,' used in the same connection. Clearly Congress never intended that an Indian or white man might say to his neighbors, 'I claim a hundred thousand acres, or a million acres, or any other amount of land, between certain boundaries or natural landmarks, as my individual property,' and that such a claim would be protected by said acts, and made sacred to the rights of the claimant as a property right."

Thus construing the word "or," the statute would read:

"Indians and other persons shall not be disturbed in the possession of lands in their use or occupation and claimed by them."

But the statute is simply a prohibition against any one disturbing the possession if any such possession exists; it is not

a prohibition against the aliening or transferring that possession, nor against abandoning it. In the case last cited the Circuit Court of Appeals for the Ninth Circuit held that the right under the act of 1884 could be conveyed. If it could be conveyed, it could be abandoned, for an abandonment of possession is in effect a conveyance, not to any specific person, but to all the world.

In Carroll v. Price (D. C.) 81 Fed. 143, Judge Delaney, formerly of this court, virtually construed the statute in the same way in his instructions to the jury. Carroll, in that case, claimed under the act of 1884, but the charge was:

"If you find from the evidence that the plaintiff and his grantors have been in the continuous occupancy and possession of the tract located by Powers in 1881. * * * On the other hand, if you find that the plaintiff did not have such possession, or that the ground was unoccupied, unpossessed, and unimproved public land when Price took possession of it in 1895, then he had the right to go on, locate, and occupy it, and the defendants, as his grantees, are entitled to your verdict."

In 1884 plaintiff had use, occupation, and claim of the tideland in controversy, but after 1894 it did not continue the use or occupation of the tideland in controversy. How, then, was it possessed of any right to keep others off?

Plaintiff contends that it had color of title, and, being in foot possession of the tideland covered by the wharf, it had constructive possession to the limits of the paper title. As a propositon of law, this may be conceded, and that leads to the inquiry: "Did plaintiff have color of title?"

It is claimed that plaintiff's color of title was this, to wit: The location notice filed in the office of the United States commissioner at Juneau in 1881 by M. W. Murry. The answer to this is twofold:

(I) There is no evidence that prior to 1898 they claimed under or had anything to do with Murry.

(II) If Murry were but a trustee for them, so that the location notice is really their location notice, yet a location notice is not color of title. ·

Color of title is that which purports to be title, but is no title. It is not title, but only the semblance of title. It must be in form a conveyance of title. One cannot make his own color of title. A location notice is not a conveyance. It is a mere claim.

In 1900 defendant went upon the tideland, cleared it of boulders, and commenced to use it as a landing place for rafts and scows, and ever since said year has been so using it without let or hindrance from plaintiff—improving it from time to time.

During all this time plaintiff has neither used nor occupied the tideland in question, except that it collected some rent from Receiver Davidson, and permitted one Messerschmidt to land some wood there, and has paid taxes. This is insufficient. The permission to Davidson and Messerschmidt is on a par with the proposition of the tramp to the slow-witted person that the former would give the latter one-half of all the logs floating down the Yukon past Dawson which the latter might catch; while as to the payment of taxes, that is only a circumstance evidencing a bare claim. It evidences neither use nor occupation.

As to the claim of plaintiff that defendant is preventing or interfering with his access from the uplands, the proof is substantially like that in the case of McCloskey v. Pacific Coast Co. Whatever littoral rights plaintiff may once have had have been cut off by conveyances and by the street.

Findings and decree for defendant.