### MILWEE et al. v. WADDLETON.

(Circuit Court of Appeals, Ninth Circuit. July 3, 1916.)

#### No. 2649.

1. ADVERSE POSSESSION ⊂⇒51—TITLE—CLAIM IN GOOD FAITH.

Under Comp. Laws Alaska 1913, § 1874, which does not require claim in good faith for 10 years' adverse, open, and notorious possession to ripen into title, plaintiff, who held for that time, though judgment was recovered against him by defendant, acquired an adverse title, regardless of whether his claim was in good faith.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 238, 239; Dec. Dig. ⊂⇒51.]

2. PRINCIPAL AND AGENT ⊂⇒28—POWER OF ATTORNEY—AUTHORITY.

Where one entitled to share in an estate executed a power of attorney to enable his counsel to close up the estate, the attorney cannot, over 20 years after the power was given, convey lands belonging to the estate which the beneficiary had seen, declared to be worthless, and had abandoned, particularly where the beneficiary had not been heard of in the meantime.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 50; Dec. Dig. ⊂⇒28.]

In Error to the District Court of the United States for the First Division of the District of Alaska; Robert W. Jennings, Judge.

Ejectment by William N. C. Waddleton against S. H. Milwee and another. There was a judgment for plaintiff, and defendants bring error. Affirmed.

J. H. Cobb, of Juneau, Alaska, for plaintiffs in error.
Winn & Burton, of Juneau, Alaska, for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The defendant in error, who was the plaintiff in the court below, in the spring of 1896 entered into posses-

sion of a lot in the town of Juneau, and remained continuously in possession, claiming to own the lot, from that time until June 12, 1914, when he was ousted by the defendants. The lot was a part of the patented town site of Juneau. The town-site trustee on November 10, 1898, conveyed the lot to the "Pullen heirs"—James H. Pullen, Mary H. Wilson and Thomas R. Wilson. The conveyance was made after a contest between the said grantees and the plaintiff. From the decision on that contest the plaintiff appealed. In 1902 the decision was affirmed by the Commissioner of the General Land Office. Notwithstanding the decision, the plaintiff remained in the undisturbed possession of the premises, claiming to own the same, and paying the taxes thereon, until his eviction in 1914, whereupon he brought ejectment against the defendants. On the trial of the cause the court instructed the jury to return a verdict in favor of the plaintiff for a two-thirds interest in the lot; Pullen having conveyed to the defendants only a one-third interest in the same. As to the remaining one-third interest the court submitted to the jury the question of the right and title of the respective parties thereto, and the jury returned a verdict for the plaintiff as to that interest also.

[1] The defendants assign error to the refusal of the court to instruct the jury to return a verdict in their favor and to the peremptory instruction to return a verdict for the plaintiff for an undivided two-thirds interest in the lot. We find no merit in either of these assignments. The plaintiff claimed the title and paid the taxes, under an open, notorious, continuous, hostile, and adverse possession under a claim of ownership for more than 10 years. The defendants say that the plaintiff, after a judgment against him, could not claim title in good faith, and they cite Jasperson v. Scharnikow, 150 Fed. 571, 80 C. C. A. 373, 15 L. R. A. (N. S.) 1178, and Center v. Cady, 184 Fed. 605, 106 C. C. A. 609. Those decisions were based upon a statute of the state of Washington (Ballinger's Ann. Codes & St. § 5503), which provided that one should be held to be adjudged the lawful owner of property if he were in actual, open, and notorious possession of the same under a claim and color of title "made in good faith," and who should during said time pay all taxes legally assessed on such lands.

There is no provision in the statute of Alaska that the claim of title shall be made in good faith. It is sufficient if for the specified period the possession is maintained and ownership asserted in accordance with the provisions of the statute. We think, however, that it might properly be held that the plaintiff's claim of title in this case was made in good faith. Notwithstanding the adverse decision against him, he remained in the undisturbed possession and claimed the property. He claimed it, he said, "because I thought I had a better right, the Pullen heirs had not been heard from, and I didn't think they could get it." And he testified that no claim whatever had been made by any of the Pullen heirs to the land in controversy, and that it formed no part of the inventory of the Pullen estate, and had never been occupied by any of the Pullen heirs. Mr. Heid, who was attorney for J. H. Pullen, testified that when Pullen saw the lot he abandoned it and gave it up in disgust.

[2] Again, we are of the opinion that the defendants proved no title in themselves. Their claim of title depended wholly upon a conveyance, executed by John J. Heid under a power of attorney from James H. Pullen, which had been made and executed 26 years before the conveyance. The power of attorney gave general authority to take charge of all the property of Pullen, real and personal, in the town of Juneau, with authority to lease, bargain, and sell the same upon such terms and under such covenants as Heid might see fit. It was evidently executed for the purpose of enabling the grantee therein to take possession of and settle up the interest of the grantor in the estate of which he was one of the heirs. Pullen shortly afterward came to Juneau, and according to Heid's testimony he never returned. From that time on Heid never again saw or heard from him. Heid testified that Pullen, when he saw the property, was greatly disappointed in it, "and, when shown this particular lot, abandoned it and gave it up in disgust, and I have never received a letter or any word from him since that time."

A power of attorney executed under the circumstances detailed should be held insufficient to authorize the execution of a conveyance 26 years after its date. It is the settled rule that the duration of a power depends upon the intention of the grantor, as shown by its terms, by the purposes he had in view, and by the surrounding circumstances. 31 Cyc. 1051. It would seem that the purpose of this power of attorney had been fulfilled and its life ended when the grantor thereof visited Juneau, examined the property, and abandoned it as valueless. It would be going far to hold that, in the absence of knowledge of Pullen's whereabouts, or knowledge whether he was alive or dead, and in the absence of communication from him to his agent for a period of more than 20 years, the conveyance to the defendants was the act and deed of Pullen. In Marquam v. Ray, 65 Or. 41, 131 Pac. 523, the Supreme Court of Oregon said:

"Where the time within which the power is to be exercised is not fixed in the instrument, it must be exercised within a reasonable time"—citing Clark and Skyles on Agency, p. 542.

The judgment is affirmed.