Day, J.
 

 The paramount question in this case is whether the Flater decree of 1912 estops Rose Myer Rosenstihl, and those claiming with her, from now asserting any rights in the 18 inches between the original lot line as platted and the fence line as established by Clark in 1900, pursuant to the agreement set forth in his deed from Magdalena Myer. The Court of Appeals based its decision solely upon this point, holding that the plaintiffs in error were so estopped.
 

 The proceeding above referred to was begun in 1912 by Henry Flater, predecessor in title of the defendant in error in this proceeding. Flater, we are advised by the findings of fact, at that time held a deed for lot 661, from Harvey G. Clark, and was in actual possession of all that part of said lot east of the line of the fence erected by Clark in 1900; the said Magdalena Myer being in possession west of said fence.
 

 
 *407
 
 The record discloses, in finding of fact No. 2, that on “December 11, 1899, said Magdalena Myer sold and conveyed lot number 661 to one Harvey G-. Clark who in and as a part of said deed, agreed ‘to build at his own expense a division fence between said lot and grantor’s lot adjoining on the west side thereof,’ and in the summer of the year 1900 he built a division fence which he located about 18 inches east of the west line of lot 661. Said Magdalena Myer and her successors in title, who are the plaintiffs herein, have ever since occupied on the west of said fence up to the line thereof, and were in possession of said premises at the time of the commencement of the suit herein under claim of right and they and their predecessors in title have been in open, notorious and exclusive possession thereof ever since the building of said fence in the summer of 1900, under claim of right. Different sections of said fence have been removed at different times and none now remains standing. ’ ’
 

 The action by Flater was one to quiet title, brought in the ordinary form, the petition averring: That the plaintiff was “seized in fee simple and in actual possession * * * lot No. 661, formerly lot 44, in Vances addition to said city.”
 

 The petition fails to make averments with reference to the specific strip of land in dispute in the case at bar. The decree was by default and the journal entry recited that the title and possession of the premises in the petition described were in the plaintiff, and quieted the same against the defendants and those claiming under them, and
 
 *408
 
 they were enjoined from setting np any claim adverse to the title and possession of the plaintiff.
 

 The finding of facts further discloses that neither Flater nor his predecessors or successors in title have ever taken any physical possession of the land now in dispute lying west of the line of the fence, nor does the record show any writ of possession or any attempt to enjoy the fruits of this decree quieting title, so far as the same relates to the strip of land in dispute. On the contrary, the finding of facts discloses that the plaintiff in error in the present proceeding, and her predecessors in title, at all times before and after said decree quieting the title, were in the open, notorious, exclusive possession of the land up to the line of the old fence, from 1900 down to 1924, under a claim of right.
 

 Under such a record, does this action to quiet title stop the running of' the statute of limitations as against plaintiffs in error?
 

 It is to be noted that the decree in question never was reduced to an actual enjoyment of that portion of lot 661 which is in controversy in this case, nor was any possession thereof had under said decree. On the contrary, Mrs. Myer and her successors continued to occupy adversely to Flater and his successors for a period of 12 years after the quieting title suit.
 

 The law upon this point is stated in 2 Corpus Juris, p. 109, Section 168, as follows:
 

 “According to the weight of authority the mere recovery of a judgment in ejectment will not of itself stop the running of the statute of limitations.
 
 *409
 
 There must he an actual change of possession by virtue of such judgment, and where plaintiff in ejectment neglects to enforce his judgment within the period laid in his demise, his right of entry under that judgment is altogether gone.”
 

 In a note on the subject of a suit affecting the title to real estate not prosecuted to an actual change of possession as tolling the statute of limitations, the editors of L. R. A., 1918A, at page 1046, say:
 

 “The courts are practically in harmony in holding that where an action of ejectment or an action to try the title to or obtain the possession of real estate fails, or does not result in a judgment in favor of the plaintiff which is prosecuted during the life of the judgment to an actual ouster of the defendant and the taking possession of the land in controversy by the plaintiff, or the clear recognition of the plaintiff’s title by the defendant, it does not have the effect of suspending or tolling the running of the statute of limitations in favor of- the defendant against an independent action. ’ ’
 

 Numerous cases are cited in support of this text.
 

 The following cases will be found to be in support of the principle that a judgment in an action to quiet title adjudicating possession of land and awarding it to one of the parties, but under which judgment no possession is taken, nor any recognition of plaintiff’s title is made by a defendant holding adversely, is insufficient to interrupt the running of the statute of limitations:
 
 Bessler
 
 v.
 
 Powder River Gold Dredging Co.,
 
 90 Or., 663, 176 P., 791, 178 P., 237;
 
 Hodgkins
 
 v.
 
 People’s Water
 
 
 *410
 

 Co., 177
 
 Cal., 730, 171 P., 945;
 
 Lessee of Smith
 
 v.
 
 Trabue’s Heirs,
 
 1 McLean, 87, Fed. Cas., No. 13116;
 
 Bellenger
 
 v.
 
 Whitt,
 
 208 Ala., 655, 95 So., 10;
 
 Forbes
 
 v.
 
 Caldwell,
 
 39 Kan., 14, 17 P., 478;
 
 Milwee
 
 v.
 
 Waddleton,
 
 147 C. C. A., 663, 233 F., 989;
 
 Carpenter
 
 v.
 
 Natoma Water & Mining Co.,
 
 63 Cal., 616;
 
 Doe ex dem. Bright
 
 v.
 
 Stevens, 1
 
 Houst., (Del.), 240;
 
 Bradford
 
 v.
 
 Wilson,
 
 140 Ala., 633, 37 So., 295;
 
 Duffy
 
 v.
 
 Duffy,
 
 20 Pa. Super. Ct., 25 (in which Pennsylvania cases are discussed);
 
 Rook
 
 v.
 
 Greenewald,
 
 22 Pa. Super. Ct., 641.
 

 Authorities are not, however, uniform upon this question, and the following cases will be found to hold the contrary view:
 
 Rogers
 
 v.
 
 Johnson,
 
 259 Mo., 173, 168 S. W., 613;
 
 Wade
 
 v.
 
 McDougle,
 
 59 W. Va., 113, 52 S. E., 1026;
 
 Oberein
 
 v.
 
 Wells,
 
 163 Ill., 101, 45 N. E., 294;
 
 Perry
 
 v.
 
 Eagle Coal Co.,
 
 170 Ky., 824, 186 S. W., 875.
 

 Under the facts as disclosed by this record, considering the agreement shown by the deed between Magdalena Myer, the original grantor, and Clark, the original grantee, “to build at his own expense a division fence between said lot and grantor’s lot adjoining on the west side thereof,” the actual occupation by the respective parties of the property up to this division line from 1900 down to 1924, and the further fact that in the petition in the quieting title proceeding in 1912 no mention is made of any dispute as to the 18 inches in question, we hold such a decree quieting title does not toll the statute of limitations. Although actual possession of lot 661 is averred in the petition in the quieting title case, yet the finding of facts in the
 
 *411
 
 instant case by the Court of Appeals discloses that, in fact, Mrs. Myer had actual possession of the 18-inch strip during all the time. So that any possession thereof at any time by Flater would be impossible.
 

 The petition must be construed to "mean such possession of lot 661 as Flater actually enjoyed at the time. Pleadings are to be construed as referring to the conditions surrounding the parties at the time of filing, unless the contrary appears. It was only so much of lot 661 of which Flater was in possession for which he was entitled to have his title quieted. The fence agreement in Flater’s predecessor’s deed and the construction placed thereon by the parties after its erection, by each party occupying up to the line thereof, indicate that so much of lot 661 as then occupied by the parties was in contemplation when the suit was filed to remove the various clouds from the title of lot 661.
 

 We are therefore not disposed to regard the quieting title action of 1912 as stopping the running of the statute of limitations under the facts surrounding these parties as disclosed by the record. The situation before us is that, notwithstanding the decree quieting title, plaintiffs in error still remained in the actual possession of said strip of land, which would clearly be an adverse holding. They are saying, in effect:
 

 “Notwithstanding all your claims and all your decrees, I am still here in possession and have been now for 24 years, claiming openly, notoriously, exclusively, a title adverse to you and to all others,
 
 *412
 
 whereby I have become the owner in fee simple, based on which I have brought this action against you.”
 

 Both parties to the quieting title case, enjoying their property up to the line of the division fence erected by agreement, might well have considered that no claims were made by either party to the property of the other lying beyond the line of the old fence. At any rate no advantage was ever taken of the decree by Flater or his successors and no attempt was made to challenge the possession and occupancy of present plaintiffs in error or their predecessors in title until after the statute of limitations had run. “Equity comes to the vigilant and not to those who slumber on their rights.”
 

 Not having seen fit to enforce whatsoever rights might have been enforced under this decree, we now think that it is too late to assert the same; hence our conclusion is that the plaintiffs in error are not estopped to assert their title by prescription to the strip of land in question.
 

 It is argued by counsel for plaintiffs in error that the line fixed by the parties at the time of the deed between Mrs. Magdalena Myer and Harvey Gr. Clark became the true boundary line and that both parties using and enjoying their property up to said line the same became the true division line by agreement, before the statute of limitations had run. Without discussing this point, it is sufficient to say that the finding of the Court of Appeals fully justifies the view that the enjoyment from 1900 down to 1924 by the plaintiffs in error and their predecessor in title was such as to clearly establish a prescriptive title.
 

 
 *413
 
 That a prescriptive title may be acquired by a grantor as against grantee is well established by the authorities. The rule is well settled in 1 Ruling Case Law, p. 752, Section 76, as follows:
 

 “But it is well settled that a grantor of land may originate a possession adverse to his grantee, and that such possession differs from that originated by a stranger only in requiring stronger proof to sustain it. The grantor must manifest his intention to hold adversely by some unequivocal act of hostility. As a rule, continued open and notorious possession by a grantor will be deemed to be adverse where it is of such a character as to be entirely inconsistent with the rights of the grantee. Thus the grantor’s entry after conveyance must be deemed to be adverse where there is no evidence that he entered for or under the grantee, but where he acted in all respects as the sole owner, making leases, receiving rents, paying-taxes, improving the property, etc. So the refusal by a grantor, in possession of the premises, to surrender them to the grantee, is notice to the latter that he must proceed to vindicate his rights, and, if he delays in doing so beyond the statutory period, his deed cannot prevail against his grantor’s adverse possession.”
 

 See, also, 2 Corpus Juris, p. 145, Section 250.
 

 We think the circumstances disclosed by this record bring the parties within the rule as above set forth.
 

 Nor do we think the circumstance that Plater constructed a cement sidewalk along the front of lot 661 for a length of 50 feet is to be regarded as militating against the rights of Magdalena Myer
 
 *414
 
 and those claiming under her. This work was, of course, outside the lot line and no part thereof lay upon the strip of land occupied adversely by Magdalena Myer. The fact that Flater permitted the said Magdalena Myer to continue in the open, notorious, and adverse possession of this strip of land after he had constructed a sidewalk of 50 feet in length is a circumstance in favor of the adverse character of the holding of Mrs. Myer, and a recognition thereof by Flater.
 

 Finding that the action to quiet title in 1912 did not stop the running of the statute of limitations, that the title of plaintiffs in error to the premises in question is paramount to that of the defendant in error, it follows that the judgment of the Court of Appeals must be reversed. The findings of fact of the Court of Appeals justify a decree in favor of the plaintiffs in error.
 

 Final judgment is rendered for the plaintiffs in error, as prayed for in the petition.
 

 Judgment reversed.
 

 Marshall, C. J., Matthias and Allen, JJ., concur.