(No. 25414.—

IRA A. BRANCH *et al.* Appellants, *vs.* NATHAN L. LEE *et al.* Appellees.

*Opinion filed February 21, 1940—Rehearing denied April 3, 1940.*

June C. Smith, Hugh V. Murray, Jr., William C. Stephens, and Robert J. Branson, for appellants.

Green & Palmer, Wilson & Wilson, Wham & Wham, Pfaff & Miller, Kiger & Dilsaver, Smith & McCollum, John L. Kagy, Leigh M. Kagy, and Basil Wilson, for appellees.

Mr. Justice Jones delivered the opinion of the court:

This is a suit in equity brought in the circuit court of Marion county seeking to have declared void all the proceedings in a former partition suit, the master's deed made pursuant thereto, and all subsequent conveyances, leases and assignments in the chain of title of such master's deed. The circuit court dismissed the complaint for want of equity on the ground defendants had proved good title by actual possession of the lands in controversy, under claim and color of title, made in good faith, and by payment of all taxes legally assessed on such lands for seven successive years, as provided by section six of the Statute of Limitations. (Ill. Rev. Stat. 1939, chap. 83, par. 6.) The plaintiffs have appealed.

The property involved both in this suit and the partition suit consists of three tracts of land in Marion county totalling 35 acres. This land was owned by Dr. Taylor Branch at the time of his death, prior to April 14, 1927. He left five children as his only heirs-at-law, and they are the plaintiffs, and appellants, in this suit. They were also parties to the partition suit filed by Ellen Fowler, one of Dr. Branch's daughters, April 14, 1927. In the original complaint and in the decree for sale entered at the April, 1927, term, a part of the five-acre tract was omitted and another parcel erroneously included. However, at the Sep-

tember, 1927, term, the master filed his report showing that he had offered the premises for sale and had received no bids. The original decree for sale was then vacated, further proceedings were had, a new decree for partition entered, new commissioners appointed, and the report of the commissioners made that the premises were not susceptible of division, and a decree for sale was entered. In all these proceedings at the September term, the five-acre tract was correctly described, but the complaint was never amended, nor was notice given to the defendants, all of whom had been defaulted at the April term. The premises were sold *en masse* to B. F. Bachman for $117, which was less than the costs of the suit. The report of sale was approved, and a master's deed issued to B. F. Bachman. All appellees claim through the chain of title thus acquired by Bachman. The instant suit was begun November 9, 1938, more than ten years after the issuance of the master's deed. It was stipulated that six oil wells have been drilled on the property by the Texas Company and the Wiser Oil Company appellees, and were, at the time of this trial, commercial producing oil wells, drilled and equipped by the oil companies at an approximate cost of $10,000 for each well.

Appellants contend that in the partition suit many errors were committed which were jurisdictional and rendered the decree for sale entered at the September, 1927, term not merely erroneous, but absolutely void and subject to collateral attack. However, in view of the conclusion we have reached, it will be unnecessary to consider these numerous contentions.

One of the defenses interposed by appellees and sustained by the circuit court was that they had acquired title under section 6 of the Statute of Limitations, *supra.* Appellees assert that even though the decree for sale was void, the master's deed made pursuant to it constituted color of title, and that such color of title was acquired in good faith. In our opinion, this is true. We have held in numerous

cases that a deed which on its face purports to convey title constitutes color of title, though it is based on an erroneous or even void decree. The fact that a deed fails to pass an absolute title is not material, and the fact that it is made under a decree which was erroneous, or even void, in the absence of fraud, will not affect the defense under the Statute of Limitations; and the presumption of good faith will prevail until it is overcome by evidence of fraud or actual bad faith. (*Reedy* v. *Camfield,* 159 Ill. 254; *Duck Island Club* v. *Bexstead,* 174 id. 435; *Sexson* v. *Barker,* 172 id. 361; *Hinkley* v. *Greene,* 52 id. 223.) Here, there was no evidence of fraud or bad faith on the part of Bachman in acquiring the master's deed and no evidence that he knew of any errors in the partition suit, to which he was not a party. It is true that his sister, Pauline Pope, held a mortgage on a part of the land involved and was made a party defendant to the partition suit. However, the evidence does not substantiate the contention of appellants that Bachman was the beneficial owner of the mortgage or that he engineered or was responsible for the bringing of the partition suit. We hold, therefore, that Bachman acquired color of title in good faith.

The only remaining question is whether appellees proved payment of all taxes legally assessed against the property for seven successive years. This question pertains only to the five-acre tract of land, for it was stipulated at the trial that all taxes assessed against the lands involved had been paid. This stipulation was not withdrawn except as to the five-acre tract. This is an irregular shaped piece of land and its legal description is extremely lengthy. It is located in the southwest corner of the southwest quarter of the southwest quarter of section 28. For the most part, its northern boundary follows Crooked creek; 4.4 acres of this tract lies in the west half of the southwest quarter of the southwest quarter and .6 of an acre lies in the east half of the southwest quarter of the southwest quarter.

A certified copy of the tax books for the town of Salem for the years 1928 and 1937, inclusive, was introduced by appellants, showing payment of taxes assessed in those years on all lands located in the southwest quarter of the southwest quarter of the section. The county clerk also certified that no taxes were paid on any other land in that forty acres, in those years, by any description, except as shown on the exhibit. From this exhibit it appears that Nathan Lee, who acquired title to this five-acre tract from Bachman, paid taxes on two tracts of land in the west half of the southwest quarter of the section. One was described as five acres "S. end SW SW." The other was described as 40 acres "Pt. W² SW." One other tract was assessed in the west half of the southwest quarter, and taxes paid from 1928 to 1932, inclusive, by A. O. Lee, from 1933 to 1936 by John Young, and in 1937 by Jason Chapman. It was described on the tax records as 35 acres "E² W² SW Exc. 5 A off W sd. S² E² W² SW." It thus appears that the three tracts constituted 80 acres in the west half of the southwest quarter, which is the entire half-quarter of the section. A map introduced by appellees also indicates the three tracts comprised the entire west half of the southwest quarter. However, it is true that the description 5 acres "S end SW SW" is too indefinite to identify the property in dispute. The rule was stated in *Sanitary District* v. *Allen,* 178 Ill. 330, as follows: "Where tax receipts contain descriptions of property too uncertain to identify the payments as having been made upon the particular property in dispute, and there is no other evidence showing that the payments were made on the particular property, the receipts cannot be regarded as sufficient." However, it is also firmly established that it is competent to prove by parol evidence on what land taxes are, in fact, paid, and thus to supplement or contradict the evidence of the written receipts for taxes. Proof of the payment of taxes may be made in any legitimate mode. The receipt forms no part of the pay-

ment but is only evidence of the fact. Payment of taxes may, in a case of this character, be proved by the verbal evidence of a witness, as well as may the payment of money in any other case. (*Hinchman* v. *Whetstone,* 23 Ill. 108; *Elston* v. *Kennicott,* 52 id. 272; *Milliken* v. *Marlin,* 66 id. 13; *Fagan* v. *Rosier,* 68 id. 84; *Neiderer* v. *Bell,* 174 id. 325; *Stumph* v. *Osterhage,* 111 id. 82.) Nathan Lee testified that he took possession of the entire five-acre tract, as shown on the map, cut the timber on it and removed some rock; that "I was paying for the entire five acres; from the east point clear back. That includes both the 4.40 acres and the .60 acres. Nothing was said about it; I just came up and paid the taxes and there they were in black and white. I went and paid the back taxes on this same piece of ground; I also paid the taxes on the piece of ground north." In *Stumph* v. *Osterhage, supra,* we held that testimony similar to this was sufficient to show payment of taxes on the particular property in dispute. It is our conclusion that the testimony of Nathan Lee that he occupied and paid taxes on the land in controversy, the evidence that taxes on the entire 80 acres were paid by Nathan Lee and by the successive owners of the other tract in the west half of the southwest quarter of the section, and the certificate of the county clerk that no taxes were paid on any other land in the southwest quarter of the southwest quarter of section 28 by any other description, show clearly that Nathan Lee paid taxes on this 5 acres involved, although the description in the tax books is, of itself, too indefinite.

The decree of the circuit court is affirmed.

*Decree affirmed.*