**Leo LOTT, a/k/a Leo L. Garland and Leo L. Luckett, Appellant,**

v.

**MULDOON ROAD BAPTIST CHURCH, INC., Appellee.**

No. 1103.

Supreme Court of Alaska.

March 16, 1970.

---

Albert Maffei, Anchorage, for appellant.

Charles W. Hagans, of Hagans & Opland, David J. Pree, Anchorage, for appellee.

Before DIMOND, RABINOWITZ, BONEY and CONNOR, JJ.

## OPINION

BONEY, Justice.

This case involves the title to certain real property which appellee claims to have acquired through adverse possession under color of title. The property is part of what is described as Government Lot 92 in Section 13, Township 13 North, Range 3 West, Seward Meridian. This appeal involves only the south 75 feet of the north 135 feet of the lot.

In 1951, appellant, Leo Lott (also known as Leo L. Luckett) came to Alaska; shortly thereafter she married Burnie B. Garland. In September of 1952, appellant acquired in her own name, Leo L. Garland, real property described as the northernmost 75 feet of tract 48 in section 13. Tract 48 was an earlier designation for lot 92.

In 1955, Leo and Burnie Garland were divorced. As part of the property settlement, appellant obtained by a recorded deed an additional 60 feet of lot 92 from Burnie. This property was to the south of and adjacent to the 75 foot parcel acquired by appellant in 1952. The result of this settlement was to divide the lot which is 330 feet long into two parcels: the north 135 feet belonging to appellant and the south 195 feet belonging to Burnie Garland.

Some time in 1955 appellant left the State of Alaska. While she was absent from the state, Burnie Garland caused a survey to be made and a plat prepared in which the south 270 feet of the lot was subdivided into three lots.[1] Since Burnie Garland only owned the south 195 feet of the lot, the platted land extended 75 feet on to the portion of the lot owned by appellant. This encroachment included the 60 foot parcel which Burnie had deeded to appellant in the divorce settlement, and a small part of the 75 foot parcel appellant had acquired in her own name. The platted land was designated "Homesite Park Subdivision." The plat contained a certificate of ownership whereby Burnie Garland certified that he owned all of the property described in the plat. The plat was dated June 7, 1958, and filed on August 21, 1958.

On August 8, 1958, Burnie Garland purported to convey the property described in the plat to the Title Insurance and Trust Company, as trustee, under a recorded deed of trust. The deed of trust was to secure a loan to Garland of $3,612 from the City National Bank of Anchorage. On September 12, 1959, Title Insurance and Trust, by a deed of reconveyance conveyed the platted land back to Burnie Garland. This deed was recorded on September 14, 1959, and described the property as Lot 92, of Section 13, Township 13 North, Range 3 West, Seward Meridian except the north sixty feet. At this time actual title to the north 135 feet was still held by appellant.

---

1. The figure of 270 feet includes a 30 foot street easement at the southernmost end of the lot. The three lots of the subdivision were approximately 80 feet each.

Some time in 1959 Burnie Garland rented the property for use as a Sunday school to Cecil Owens, a member of the Tribal Baptist Church. On July 7, 1960, Garland entered, with the Eagle River First Baptist Church, into a recorded one-year lease with option to purchase. The property described in the lease was the same as had been described in the deed of trust, deed of reconveyance and the plat, that is, the entire lot 92 except the north 60 feet. The lease provided that the owner "is willing to rent and sell said property to the church in accordance with the terms and provisions of this agreement." The church was to pay $150 per month for one year at which time $900 would be applied to the purchase price of $25,000. The "option" to purchase was to be exercised with thirty days notice; and in the event it was not exercised, the lease provided that the church could remove its improvements but would reimburse the owner for any expenditures for title insurance. The church took possession immediately, and the church has held services on the property every week since it took possession. Reverend Chron testified that it was the church's understanding that they were really buying the property outright, not leasing it.

Burnie Garland died in California on June 7, 1961. On February 27, 1962, the National Bank of Alaska executed an administrator's deed which purported to convey the same property which was the subject of the "lease with option to purchase." The deed was issued to the appellee Muldoon Road Baptist Church, successor to the Eagle River First Baptist Church.

On July 27, 1967, appellant filed suit to eject appellee from the property and to quiet title to that portion (75 feet) of Homesite Subdivision which is included in the north 135 feet of lot 92. After trial without a jury, a judgment was entered which decreed that appellant had no right to or interest in the property. From this judgment, Leo Lott appealed claiming that color of title was not established by the lease with option to purchase, or any other instrument, and that the statute of limitations applying to actions for ejectment of persons without color of title had not run. On appeal the church claims that the superior court correctly determined that the church or its predecessors have held the property under color of title for the required length of time.

■ Evidence adduced at the trial showed that the earliest act of hostile possession of land in question came at some time in 1958 when Burnie Garland had the land surveyed and platted. Other evidence at the trial was sufficient to allow the court to find that Burnie Garland retained actual possession of all of the land in question. Moreover, there is apparent agreement that the possession by the church and its predecessors has been open, notorious and continuous. Thus the sole question presented in this appeal is whether such possession has been under color of title.

In Alaska the "color of title" doctrine is created by statute; AS 09.25.050 provides:

> The uninterrupted adverse notorious possession of real property under color and claim of title for seven years or more is conclusively presumed to give title to the property except as against the state or the United States.

"Color of title" as used in this statute has been defined by this court in Ayers v. Day & Night Fuel Co., 451 P.2d 579, 581 (Alaska 1969):

> Color of title exists only by virtue of a written instrument which purports, but which may not be effective, to pass title to the claimant.

■ The function of the doctrine of color of title is to define the exact boundaries of the land which is claimed.[2] When one

2. Bailey v. Jarvis, 212 Ark. 675, 208 S.W. 2d 13, 15 (1948); Burns v. Stewart, 162 N.C. 360, 78 S.E. 321, 324 (1913); West Virginia Pulp & Paper Co. v. J. Natwick & Co., 123 W.Va. 753, 21 S.E.2d 368, 371 (1941).

adversely possesses land under color of title the extent of the land possessed is measured by the terms of the purported instrument giving color of title rather than by the actual physical use by the claimant.[3] The other effect of the doctrine is to shorten the period of prescription from 10 years to 7.[4] The shortened period of prescription is most logically attributable to a belief that a person holding land under color of title will be more likely to make improvements and otherwise commit himself to that land.

The good faith of the claimant is not a relevant issue under our ten-year adverse possession statute.[5] But we must consider whether good faith is a necessary element in order to establish adverse possession under color of title pursuant to AS 09.25.050. This question has not yet been determined in the courts of Alaska.[6] Although several jurisdictions have held that a claim under color of title does not require good faith,[7] we prefer to follow those other states which hold that the good faith of the claimant is a prerequisite to the establishment of his claim under color of title.[8]

In adopting this interpretation, we also favor the concomitant presumption of good faith, in the absence of an express allegation and showing to the contrary.[9] In short, we feel that it would be inequitable to allow a claimant to create color of title in himself by means of a sham conveyance or a reconveyance to himself through a "strawman" transaction. In the circumstances of this case, however, we need not pass upon the details of what constitutes good faith, nor do we have occasion to discuss exactly what would constitute bad faith under AS 09.25.050.[10] The only question is whether the claim here is based on a written instrument which purports to pass title, and which adequately describes the claimed property.

Appellant is correct in asserting that Burnie Garland could not have

---

3. Ringstad v. Grannis, 11 Alaska 393 (D. Alaska 1947) ; 6 R. Powell, Real Property § 1017 at 734 (1969) ; 3 Am.Jur.2d, Adverse Possession § 27 (1962).

4. AS 09.10.030 provides :
   No person may bring an action for the recovery of real property, or for the recovery of the possession of it unless commenced within 10 years. No action may be maintained for the recovery unless it appears that the plaintiff, his ancestor, predecessor, or grantor was seized or possessed of the premises in question within 10 years before the commencement of the action.

5. Milwee v. Waddleton, 233 F. 989 (9th Cir. 1916).

6. In the case of Ringstad v. Grannis, 11 Alaska 393, 397 (D.Alaska 1947), there is dictum to the effect that the good faith of the claimant is a relevant factor in obtaining color of title.

7. See for example, McDaniel v. Ramsey's Adm'rs, 305 Ky. 536, 204 S.W.2d 953 (1947) ; Shutt v. Methodist Episcopal Church, 187 Ky. 350, 218 S.W. 1020 (1920) ; Burns v. Stewart, 162 N.C. 360, 78 S.E. 321 (1913) ; Marky Investment, Inc. v. Arnezeder, 15 Wis.2d 74, 112 N.W.2d 211 (1961).

8. O'Reilly v. Balkwill, 133 Colo. 474, 297 P.2d 263 (1956) ; Hearn v. Leverette, 213 Ga. 286, 99 S.E.2d 147 (1957); Branch v. Lee, 373 Ill. 333, 26 N.E.2d 88 (1940) ; Bruce v. Cheramie, 231 La. 881, 93 So.2d 202 (1957) ; State v. Davis, 140 W.Va. 153, 83 S.E.2d 114 (1954).

9. It should be noted that in almost all of these jurisdictions the requirement of good faith was explicitly written into the statutes. We interpret AS 09.25.050 as creating a presumption of good faith, which presumption can be rebutted by a showing of bad faith on the part of the claimant.

10. In the present case it must be noted that there has been no allegation made by appellant of fraud or bad faith on the part of Burnie Garland in obtaining color of title. No showing has been made to indicate that any bad faith was in fact involved. Even in the states that require color of title to be held in good faith, it appears that a strong presumption will exist in favor of the person claiming possession under color of title, and that under such a presumption there is a great reluctance to find bad faith or fraud, absent express proof thereof by the opposing party. See, e. g., cases cited note 8 supra.

claimed color of title by virtue of the plat which he filed. This document contained a claim of ownership but did not purport to pass title to Garland.[11] However, the deed of trust from Garland to Title Insurance and Trust Company created color of title in the title company. Although Garland had no title to convey as to the disputed portion of the subdivision, he executed a deed which purported to pass title to a third person.

The deed of reconveyance which Burnie received from the title company on September 12, 1959, was in effect a quitclaim deed,[12] and purported to pass title to the property to Burnie Garland. Again, the deed purported to convey title and the property was described in clear terms. It follows, then, that the deed of reconveyance created color of title in Garland.

We are unable to agree with our dissenting colleague's view that our holding does not accord with the policy of reliance underlying AS 09.25.050. The view of reliance taken in the dissenting opinion amounts to a conclusion that a deed of reconveyance could never suffice to establish color of title under our statute. Such a view unduly restricts the doctrine of color of title and is virtually unsupported in the case law of this or any other jurisdiction. By definition, color of title presupposes invalidity in the instrument purporting to convey title. Yet if we were to adopt the narrow view of reliance advocated in the dissent, the instances would indeed be rare when a person could rely on any instrument not in actuality valid. This result, in terms of color of title, is anomalous and would only serve to render ineffective the color of title provision.

Moreover, we do not think that it requires an inordinate strain of the imagination to find that Burnie Garland could have relied on the deed of reconveyance in committing himself to the land. We start with the assumption that our color of title provision was meant to protect persons unversed in the fundamentals of business and property transactions. Accordingly, in order to find that there might have been reliance here, it is not necessary to conclude that the deed in question was relied upon as absolutely establishing Burnie's claim to the land. Rather we need only point out that Burnie may well have believed that his claim to the land was strengthened by the deed of reconveyance, and he might thereby have been prompted to commit himself to the land to a greater extent. In our view this is the type of reliance contemplated by the policy underlying color of title. Under these circumstances we can see no compelling reason, in the absence of some showing of bad faith, to hold a deed of reconveyance insufficient to establish color of title.

■ With regard to the deed of trust and the deed of reconveyance, appellant has argued only that these documents do not create color of title because they do not describe the property in dispute. This assertion is erroneous. Apparently, appellant believes that the designation "Parcel 1" and "Parcel 2", that appears in these instruments, had reference to lots 1 and 2 of the subdivision. From an examination of the instruments it is clear that "Parcel 1" referred to property unrelated to any of the property that is the subject of this appeal, and "Parcel 2" refers to the entire Homesite Subdivision.

■ Appellant has not argued that appellee should not be permitted to tack on its period of possession to that of Burnie Garland. Nor has appellant advanced any

---

11. Pacific Coast Co. v. James, 5 Alaska 180, 183 (D.Alaska 1914).

12. Quitclaim deeds have been held to create color of title in the grantee. Archer v. Beihl, 136 F. 113 (9th Cir. 1905); Thompson v. Odom, 279 Ala. 211, 184 So. 2d 120 (1966); Simpson v. Manson, 345 Ill. 543, 178 N.E. 250, 254 (1931); Dupuy v. Joly, 197 La. 19, 200 So. 806 (1941). Additionally, it has been held that a release deed is sufficient to convey color of title. Tibbetts v. Holway, 119 Me. 90, 109 A. 382 (1920).

other considerations which would preclude our finding that Burnie Garland, from the date of the deed of reconveyance, September 12, 1959, adversely possessed the disputed property under color of title, and that appellee, as successor to Garland, may claim title by adverse possession according to AS 09.25.050 for over seven years. Accordingly, we find no error in the decision below, and we affirm the judgment of the superior court.

NESBETT, C. J., not participating.

RABINOWITZ, Justice (concurring in part and dissenting in part).

The court states that the rationale of the shorter seven-year period of AS 09.25.050 "is most logically attributable to a belief that a person holding land under color of title will be more likely to make improvements and otherwise commit himself to that land." In my view, the holding of the majority opinion is inconsistent with this rationale. Without going into any issue of good faith, which I agree should be a prerequisite to establishment of a claim under AS 09.25.050, it appears to me that the gist of the court's holding is that an adverse claimant under color of title can obtain the benefit of the shorter period by means of a conveyance to a third person and reconveyance.

Such a result strikes me as being contrary to the policy reasons for granting an adverse claimant the benefit of the shorter period. For in my view, it is not dispositive of the issue in the case at bar that the form of the instruments used by Burnie Garland and the Title Insurance and Trust Company purported to pass title and adequately described the property in question.

The crucial question here is whether the person claiming under color of title would have been more likely to make improvements and otherwise commit himself to the land because of his reliance upon an instrument purporting to create color of title. Given the factual context of this record, I cannot conceive that Burnie Garland made improvements or otherwise further committed himself to the land in question in reliance upon the reconveyance from the Title Insurance and Trust Company. Under the bootstrap circumstances of the case, I fail to discern any persuasive policy reasons for holding that a claimant's color of title under AS 09.25.050 commences from the point in time that he receives a reconveyance of land to which he never previously held the title.[1]

I agree with the court's statement that it is impermissible for a claimant to create color of title in himself through a strawman transaction. But I entertain reservations as to whether the newly adopted "concomitant presumption of good faith" will further this end. In my view, adoption of a presumption of good faith in the circumstances of the case at bar, and in all future similar circumstances, creates a distinction which will prove difficult to administer and will emasculate the good-faith-of-claimant prophylactic under AS 09.25.050.

On the particular facts of this case, I believe that the seven-year period must be measured from the time the Eagle River First Baptist Church exercised its option to purchase. Since the record is silent on this issue, I would remand for further evidence and findings of fact and conclusions of law on this point.

---

1. In this regard, I believe the majority's reliance upon Tibbetts v. Holway, 119 Me. 90, 109 A. 382 (1920), is inapposite. In that case, there is no suggestion that the claim of color of title was grounded upon a reconveyance such as occurred in the case at bar.