# CHARLESTON.

## CURTIS v. MEADOWS.

Submitted April 22, 1919.    Decided April 29, 1919.

1. CONTRACTS—*Construction—Intention of Parties—Subject-Matter and Circumstances.*

    Construction of a writing is for the purpose of determining the true intent of the parties to it, and, to this end, the subject matter, the situation of the parties and the surrounding circumstances at the time the writing was executed should be taken into consideration. (p. 96).

2. BOUNDARIES—*Monuments and Calls—Construction.*

    Where a deed defines the boundaries of land conveyed by calls for marked trees as corners, and further describes the trees as being in the line of another survey, and the two descriptions are discovered to be inconsistent, the call for the marked trees will prevail over the call for the line, in the absence of any circumstance indicating a different intent. (p. 96).

3. SAME—*Marked Lines—Calls.*

    In such case, if a marked line is shown to exist, answering to the description, although not the true line of the survey referred to, such marked line will be taken as the one called for, thus harmonizing the apparently conflicting descriptions of the corner. (p. 96).

4. EVIDENCE—*Expert Testimony—Surveyor.*

    An experienced surveyor, who has surveyed many of the lines of an old survey. and who is shown to be familiar with the manner in which the lines and corners were originally marked, is competent to express to the jury his opinion as to whether a certain disputed corner is the true corner of such survey. (p. 99).

Error to Circuit Court, Raleigh County.

Action of unlawful entry and detainer by Milton Curtis against Thomas Meadows. Verdict and judgment for defendant, and plaintiff brings error.

*Reversed and remanded.*

*C. M. Ward* and *A. P. Farley,* for plaintiff in error.

*W. H. McGinnis,* for defendant in error.

WILLIAMS, JUDGE:

This action of unlawful entry and detainer was brought to recover possession of about one hundred acres of land, and was tried in 1914 resulting in a judgment for defendant. On writ of error to this court, the judgment was reversed and a new trial granted because the court had erroneously directed a verdict for the defendant. 77 W. Va. 22. It was again tried and a verdict found in favor of defendant on which the court rendered judgment, and plaintiff is now prosecuting this writ of error to that judgment.

A brief statement of the facts on which the parties rely in support of their respective claims to the right of possession is essential to a correct understanding of the law and an intelligent consideration of the alleged errors. Plaintiff does not derive his title from this State or the State of Virginia. His mere claim of title originates with one S. W. Farley, who is not shown to have had either actual possession of, or colorable claim to the land. Farley and wife conveyed it by deed, giving metes and bounds, to J. A. Campbell, May 31, 1899, stating the quantity to be about one hundred and fifty acres, at the same time reserving thirty acres within the boundary, which is also described by metes and bounds. J. A. Campbell and wife then, by two deeds dated, respectively, 24th June, 1909, and 25th January, 1911, conveyed it to plaintiff, by each of said deeds conveying an undivided half. These deeds describe the land by the same metes and bounds, and make a similar reservation of the thirty acres, the first by reference to the Farley deed for description, and the second by boundaries, which exclude said thirty acres.

Defendant claims the disputed land is a part of a tract of four hundred and eighty-four acres conveyed to him by the heirs of Andrew Moore, deceased, October 5, 1866, and is within the bounds of a large survey of 170,038 acres granted by the Commonwealth of Virginia to Andrew Moore and John Beckley, 20th January, 1795. This large survey was partitioned about 1830 among the executors of John Stuart, deceased, the heirs of Andrew Moore and the heirs of John Beckley, both deceased, in a suit originally brought, about 1804, for that purpose by John Stuart who had an

equitable interest in it. A tract designated as No. 4, containing 19,761 acres, together with others, was assigned to the heirs of Moore.

The boundaries now in dispute, as called for in Meadows' deed from the Moore heirs, are as follows: "Beginning at 2 chestnuts on a point, and on the North side of Mitchell's Ridge, corner to Joseph Lilly and with his lines N. 80 W. 302 poles to a ch. o. and a cucumber in the head of a hollow, on South side of a ridge, and in a line of the Moore and Beckley tract, and with same N. 10 E. 220 poles to 2 small white oaks and a locust on the point of a ridge." Although the trees called for at the ends of the 302 pole line as corner trees may not be located in the Moore and Beckley patent line, nevertheless defendant claims the right to have his boundary extended in order to reach said line. The Moore and Beckley line is described in the patent as running from "two white oaks near a large glade, one marked with R. I., the other M., and also several other trees blazed; thence S. ten degrees W 3,380 poles, crossing a number of streams and ridges to a white oak and chestnut oak, also a number of other blazed trees standing on a high ridge on the headwaters of Guyandotte." There is evidence tending to prove that the true location of the line is 700 or 800 feet beyond the marked corners at the ends of his 220 pole line, and the jury must have so found, under the instructions of the court. The northern portion of the rectangular piece of land included between defendant's 220 pole line, the Moore and Beckley line and his side lines extended to it, is the land in dispute. The fact being shown that the corners marked on the ground and described as being in the Moore and Beckley line when they are not, discloses a latent ambiguity in the description calling for a construction of the deed. Construction is for the purpose of arriving at the real intent of the parties, and in order to determine such intent, the subject matter, the situation of the parties and the surrounding circumstances at the time the deed was made should be considered, if they are made to appear. The parties agree on the location of the northern end of this long Moore and Beckley line, but the evidence is very conflicting respecting

the location of the corner at the southern end where a white oak and chestnut oak on a high ridge on the headwaters of Guyandotte are called for in the patent. However, there is sufficient evidence in the record to justify the jury in locating it according to defendant's contention, notably the testimony of surveyor Wilson, who says he found a chestnut oak at that point, marked about the time of the original survey, according to its annulations ascertained by blocking the tree, also evidence that another tree nearby had fallen and rotted away, and other trees blazed as pointers. The discovery and identification of this corner justified the jury in locating the line according to defendant's contention, as the line between the corners is a straight one. But the location of the Moore and Beckley line is not the controlling fact in determining the defendant's boundary. Where a tract of land is defined by monuments, marked or erected by the parties at the time it was surveyed, and erroneously described as being the corner of, or in the line of another survey, the general rule is that the monument marked by the parties must be taken as the one intended, and the reference to corners or lines of other surveys as an erroneous description of it. *Myers* v. *Bland*, 77 W. Va. 546; *Holston* v. *Vaughan*, 74 W. Va. 558; *South Penn Oil Co.* v. *Knox*, 68 W. Va. 362; *Matheny* v. *Allen*, 63 W. Va. 443; *Robinson* v. *Braiden*, 44 W. Va. 183; and 5 Cyc. 921, and cases cited in note. There is evidence of old marked line trees along the line contended for by plaintiff as the Moore and Beckley line, and the corner on the division line between lots 3 and 4, made in partitioning the large survey, was located on or near this line. This is a circumstance tending to show that, although it may not be the true Moore and Beckley line, it is, nevertheless, the line which the Moore heirs recognized as the line when they made the deed to Meadows, and hence the line designated in the deed, for two of Meadows' corners are shown to be in, or very near to this old marked line. In view of this fact there would be no ambiguity in the description or location of Meadows' boundary, the marked line answering the description of the line called for in his deed. No presumption of intention to go to the true

location of the Moore and Beckley line, wherever it might be, arises here, as we held arose in *Colliery Co.* v. *Campbell,* 72 W. Va. 449, because the circumstances of the two cases are very different. Here only a comparatively small portion of grantor's land was conveyed, defined by monuments, the location of which on the ground is established, and the distance defendant's lines would have to be extended to include the land he claims is nearly forty-nine rods or eight hundred feet, no inconsiderable distance; whereas, in the other case, the grantor clearly intended to convey all the land he had, unlimited by boundaries which he himself had established. No extraneous fact or circumstance, bearing upon the question of intention, is here shown to exist; consequently the court is confined to the language of the deed in the construction of it, and the general rule applies, which limits defendant's boundary to the location of the timber marked on the ground as his corner trees. Moreover, defendant, by a deed made to J. R. D. Meadows, June 14, 1883, for a portion of his land, recognized his boundary by calling for the chestnut oak and cucumber corner, as a corner of the land conveyed, described as being then down and as being on the Moore and Beckley line, thence running with said line, N. 10 E. 136 poles to a white oak, two chestnuts, two cucumbers, two sourwoods, by a branch. This line, as far as it extends, is identical with the western boundary line of defendant's own tract, and the deed conveys about 100 acres, the southwestern corner of his tract.

There was some effort by plaintiff to prove actual, continuous possession for ten years of the land conveyed to him by Campbell. But the possession proved was, admittedly, within the thirty acres reserved by Farley. Neither party had actual possession of the controverted land prior to the bringing of this action. Plaintiff sought to obtain possession by building a house on it, and was forcibly evicted by defendant. The land not being embraced in defendant's deed from the Moores, plaintiff's entry upon it was not a trespass upon his possession, it was not an invasion of his right and he had no right to eject plaintiff. Possession obtained by force, even by the rightful owner, from one in ac-

tual occupancy is unlawful. *Curtis* v. *Meadows*, 77 W. Va. 22; *Fisher* v. *Harmon*, 67 W. Va. 619; *Duff* v. *Good*, 24 W. Va. 682; and *Olinger* v. *Shepherd*, 12 Grat. 462. This doctrine, however, does not apply to a trespasser, or to one who is merely scrambling to obtain the possession.

It was not error to permit surveyor Wilson to express his opinion as to whether the southwestern corner of the Moore and Beckley survey found by him was the true corner of that survey, it being shown that he was an experienced surveyor and had surveyed many of the lines of the Moore and Beckley patent and observed the manner of the original marking of the lines and corners. *Colliery Co.* v. *Campbell*, *supra.*

The case was tried on the erroneous theory that the true location of the Moore and Beckley line, as determined by the jury from the evidence, prevailed over the marked corner trees called for in defendant's deed and fixed his western boundary line, and it consequently follows that some of the instructions given are erroneous, and that others, although expounding correct principles, are inapt. It is needless to review them as this opinion determines the principles which must govern a retrial of the case, and the errors complained of will be avoided.

For the foregoing reasons, the judgment will be reversed and the case remanded for a new trial.

*Reversed and remanded.*