## CHARLESTON.

J. O. McQueen *et al* v. Edith S. Ahbe *et al.*

(No. 5329)

Submitted September 15, 1925.    Decided September 22, 1925.

Adverse Possession—*Extent of Claim Defined by Void Tax Deed as Color of Title Cannot be Enlarged by Intention of Clerk Executing Deed.*

The extent of the claim defined by a void tax deed as color of title cannot be enlarged by the *intention* of the clerk who executed the deed.

Error to Circuit Court, Nicholas County.

Ejectment by J. O. McQueen and others against Edith S. Ahbe and others.    Judgment for plaintiffs, and defendants bring error.

*Judgment reversed; verdict set aside; new trial awarded.*

W. S. *Wysong* and A. N. *Breckinridge,* for plaintiffs in error.

G. G. *Duff* and *Horan & Horan,* for defendants in error.

Hatcher, Judge:

This is an action in ejectment brought here on error from a judgment in favor of the plaintiffs, rendered by the Circuit Court of Nicholas County.

A tract of 378 acres owned by Levi J. Hooker was sold by the sheriff of Nicholas County in 1875 for delinquent taxes, and purchased by J. M. Hutchinson.    Hutchinson assigned the benefit of his purchase to Henry McQueen, to whom a deed was made in 1878, by the clerk of the County Court of said county.    The deed describes this tract as situate on Brushy Fork and Powell's Mountain and bounded as follows:

"Beginning at a red oak on the top of the divide between the lower and upper Spruce and *runs* corner to a tract of land of 157 acres deeded by said Levi J. Hooker to L. M. Atwood and on a line of a survey deeded by J. B. Burroughs to H. Mc-Queen and with the same S 80 W 90 poles to a stake corner to H. C. Erich and leaving McQueen

and with Erich's line reversed N 27 E 410 poles to a beech and chestnut near the road that leads from McQueens store to L. Y. Ashley's on the east side of the same and near the top of the ridge on a line of a survey of 500 acres deeded by S. J. Hooker to Burdette and Dorsey and leaving Erich and with the latter S 80 E 200 poles to a birch and spruce pine near a branch and leaving Burdette and Dorsey S 50 W 127 poles to a chestnut oak on a south hill side S 65 W 150 poles to a small double dogwood on the side of the turnpike road and with the same S 30 W 10 poles N 80 W 14 poles S 25 W 20 poles S 43 W 24 poles to a forked locust S 23 E 6 poles S 80 E 10 poles S 52 E 4 poles to some sourwood sprouts by some rocks that is in the road at the first bend that overlooks Mumblethepeg Creek N 72 E 32 poles to a small red oak on the east side of the road and leaving it a south east course to a stake corner to a survey of 100 acres formerly owned by H. W. Powell and with S 10 W 74 poles to a chestnut oak called for corner to the same thence leaving a north west course to a small chestnut on the west side of the turnpike road near the coal bank corner to the first named survey and with the same reversed N 60 W 228 poles crossing the upper spruce *run* to a large chestnut on the side of the divide S 13 E 32 poles to a small chestnut oak on the divide S 16 W 100 poles to the beginning containing 400 acres be the same more or less."

It will be noted that the beech and chestnut corner near the road that leads from McQueen's store to L. Y. Ahley's etc. is described as being on a line of the survey of the 500 acre Burdette and Dorsey tract, and that the next call in the deed, S 80 E 200 poles to a birch and spruce pine, runs with the Burdette and Dorsey line.

The evidence shows that the beech and chestnut, and the birch and spruce pine corners respectively, were marked prior to the deed to McQueen, and that a marked line extended between these corners; that this marked line was thought at the time of the deed to McQueen, as well as for many years afterwards, to be the line of the Burdette and Dorsey survey, and that McQueen on several occasions pointed out these trees as corners of his land. McQueen died in

1899, and the plaintiffs in this action are his heirs. They now allege a latent ambiguity in the deed to their father, in that, as they claim, the beech and chestnut corner, and the birch and spruce pine corner are not on the Burdette and Dorsey line, but that this line is located about 1,600 feet east of the beech and chestnut, and about 800 feet east of the other corner. The land in controversy embraces approximately 200 acres and is situate between the marked line extending from the beech and chestnut corner to the birch and spruce pine corner on the one side, and the Burdett and Dorsey line as located by the plaintiffs on the other. The plaintiffs admit that the general rule applicable to boundaries, as announced in *Matheny* v. *Allen*, 63 W. Va. 443, *Curtis* v. *Meadows*, 84 W. Va. 94, and other decisions would limit their claim to the line between the natural monuments. But they seek to establish title to the land in controversy under the exception to the general rule as stated in *State* v. *Herold*, 76 W. Va. 537, and. *Colliery Co.* v. *Campbell*, 72 W. Va. 449, in the following manner:

> They offered in evidence three certain conveyances to Hooker, aggregating 4000 acres; they showed sales of 3628 acres of Hooker lands; they say that the 3628 acres came out of the 4000 acres, and that the residue of the 4000 acres was the tract conveyed to McQueen. The list of delinquent lands sold by the sheriff in 1875 was not recorded in manner prescribed by the statute, and for that reason it is admitted by the plaintiffs that the tax deed to their ancestor is void. Nevertheless, they contend that the tax deed was color of title to the residue of the Hooker lands, whether that residue consisted of 378 acres, or of a larger acreage, because (as they say) *the clerk intended to convey to McQueen such residue.* True the deed does not specifically call for the residue of the Hooker lands, and there is no direct proof of the intention of the clerk to convey such residue, but we are expected to infer or assume that such was the clerk's intention. We quote from the plaintiff's brief:

> "It will be observed by the court that this is the residue of a tract of Levi J. Hooker for the reason

that same is bounded by the Burdett and Dorsey
500 acres, the Erich tract of 722 acres, the Bur-
roughs tract and the L. M. Atwood tract.————
    It is apparent from the deed to Burdett and
Dorsey for the 500 acres, the deed to Erich of 722
acres, the J. B. Burroughs 549 acres, and the L. M.
Atwood tract, that the McQueen tax deed was sur-
rounded by these tracts.''

    They further contend that Henry McQueen had
possession for more than the statutory period of
certain parts of the 378 acre tract and of the liti-
gated tract; that the color of title given by the tax
deed extended to all the land in controversy as part
of the Hooker residue, and that by reason of Mc-
Queen's possession of part, he acquired title not
only to the land within the marked lines, but also
to the land in controversy.

Copies of the land-book charges against Hooker are in evi-
dence from which it appears that during the period in which
he made the several conveyances to Burdett and Dorsey,
Erich, Burroughs and Atwood, he was charged with several
other tracts besides the three referred to by plaintiffs; that in
the year 1869, when the tract of 378 acres first appeared on
the land books, he was charged with six other tracts, each
of which was described as situate on Brushy Fork, or Powell's
Mountain, or on both. It does not appear from the land book
or elsewhere in the record that the residue of the said three
Hooker tracts was in one tract, or that the 378 acres repre-
sented that residue. The 378 acres could just as well have
been the residue of one or two of the tracts as to have been
the residue of the three tracts. The description in the tax
deed does not warrant the assumption that the 378 acres is
surrounded by prior Hooker conveyances, as it contains at
least twelve calls, totalling a distance of more than a mile,
which do not run with either the Atwood, the Burroughs, the
Erich, or the Burdett and Dorsey tracts. The record there-
fore affords no base from which plaintiffs can sustain their
elaborate offensive.

The title to a tract of land sold for delinquent taxes and
bought in by an individual remains in the owner of the land

until all the essential requirements of the statute are complied ·with. If the proceeding lacks any prerequisite to the validity of the deed, the deed is void and the owner's title ·remains undisturbed. The construction placed on a like proceeding to the one in question by this court in *Lumber Co.* v. *Nutter,* 66 W. Va. 444, is that failure to record the delinquent list is more than "an irregularity, error or mistake in the performance of a duty. It is an utter failure to perform; it amounts to a vacuity and is not cured by the statute." The law therefore denies to a void tax deed statutory lineage, or legal potentiality. There remains of the tax proceeding only the paper writing, which, though barren in itself, may be used by the grantee for the sole purpose of defining the extent of a boundary to which he thenceforth lays claim. "Mere color of title is valuable only so far as it indicates the extent of the claim under it." *Robinson* v. *Lowe,* 50 W. Va. 75. "All the' decisions hold that it is necessary that the extent of the claim should be defined by the deed." 2 C. J. par. 339, p. 177.

We are cited to no decision or authority advocating the enlargement of a *mere claim* beyond the boundary defined in the color. In *State* v. *Herold, supra,* and *Colliery Co.* v. *Campbell, supra,* the conveyances were valid, and the intention which prevailed over the general law was the intention of the respective owners of the land to be affected thereby. In this case, the intention relied upon by the plaintiffs is the intention of the clerk, who acted ministerially and who had no interest in the land. The grantor in a mere colorable instrument usually has little, if any interest in the land he purports to convey. He ordinarily acts in hostility to the real owner. It would be farcical to permit the extent of the claim in a mere color to be enlarged, upon the intention of a grantor who as an individual or representative of the law, is hostile to the owner and has no personal interest in the land to be affected. The word "vacuity", which this court has applied to a void tax proceeding, is defined as "emptiness, vacancy, want of reality, nihility." Reason suggests no method of impressing a legal intendment on *vacancy.* Imagination falters at affixing a ministerial intention to *nihility.*

Unless authorized by statute, the weight of authority supports the doctrine that even if a tax deed be otherwise valid, evidence necessary to identify the land will not be supplied by intendment. *A fortiori*, the intention of a ministerial officer will not be permitted to extend the description in a void tax deed.

> "In a contract between individuals, if a latent ambiguity exist in the description of the land, parol evidence may be resorted to, to explain it, and give effect to the intention of the parties.**** But these principles are not applicable to conveyances by the assessor, and parol evidence is not admissible to explain a latent ambiguity in such conveyance, or to locate the land."

*Wofford* v. *McKinna,* 23 Texas 36.

> "There has, undoubtedly, been a difference between tax deeds and others in respect to sufficiency in description. As a part of the general strictness with which courts have uniformly regarded them, it has been held that no intendments were to be made in their favor; and that, as the officers executing them acted under statutory powers, they must be sufficiently certain on their face, and would not be helped out by any inquiry into the probable intentions of the parties."

*Delorme* v. *Ferk,* 24 Wis. 201.

> "In the case of private transactions, the courts, in construing the document, endeavor to collect the intention of the parties, and give that intention effect. If a latent ambiguity exists in the description, parol evidence is resorted to for the purpose of explaining it, and giving to the intention of the parties complete operation; and where the estate intended to be conveyed is sufficiently described in the deed or other writing, the addition of a circumstance, false or mistaken, will be rejected as surplusage, in order to carry that intention into effect. But in a tax deed words necessary to identify the land will not be supplied by intendment".

Blackwell on Tax Titles, par. 226.

Color of title has been declared by this court in *State* v. *King*, 77 W. Va. 37, to be merely a judicial fiction used in the administration of the Statute of Limitations for beneficient purposes, and that the doctrine ''imposes no duty upon the courts to permit it to be used for the achievement of unjust or fraudulent results.'' The tract sold by the sheriff as comprising 378 acres and conveyed to Henry McQueen as 400 acres, is shown by the evidence to really contain 496.52 acres. The colorable tax deed has already confirmed in plaintiffs the title not only to the 378 acres originally bargained for by their ancestor, but to 118.52 acres in excess thereof. What equity or beneficient purpose supports their claim for an additional 200 acres? None is advanced and none appears in the record.

What the boundaries are, of a tract of land, is a question of law for the court. *Bradley* v. *Swope,* 77 W. Va. 113. The trial court should therefore have construed the tax deed and instructed the jury, as requested by defendants, that the color of title under the tax deed to Henry McQueen extended no farther east than the line between the beech and chestnut, and the birch and spruce pine corners, respectively. Failure to do so, as well as the giving of instructions opposed to this holding, was error. The judgment will therefore be reversed, the verdict set aside, and a new trial awarded, if the plaintiffs are so advised, to be had in accordance with the views herein expressed.

*Judgment reversed; verdict set aside; new trial awarded.*