## RINGSTAD v. GRANNIS et al.
### No. 5357.

District Court of Alaska.  Fourth Division.  Fairbanks.
Oct. 17, 1947.

394

Bailey E. Bell, of Fairbanks, for plaintiff.
Julien A. Hurley, of Fairbanks, for defendants.

PRATT, District Judge.

This is an action in ejectment wherein the plaintiff based her right upon adverse possession. The jury found against the plaintiff, and a motion for a new trial was interposed.

In her Second Amended Complaint, as further amended by interlineation upon the 6th day of June, 1947, the plaintiff, hereinafter sometimes called Mrs. Ringstad, alleged that she was the owner of Lot 3, Block 95, Fairbanks Townsite, Alaska. She further alleged that defendants have been trespassing upon the south 75 feet of said lot.

After the statement that plaintiff was the owner of said Lot 3, she stated the property was described by metes and bounds as then set forth. She did not state the name or designation of the survey and plat upon which she relied, but the evidence showed it to be the survey of the Town of Fairbanks by L. S. Robe, C.E., in 1909.

The metes and bounds description which plaintiff set forth was a strip of ground approximately 25 by 158 feet,

approximately one-half of which was in Lot 2, and the other half in Lot 3. Approximately two-thirds of Lot 3, as shown by the survey and plat, was not within plaintiff's metes and bounds description.

The defendants denied the allegations of plaintiff's said complaint and alleged that they were the owners of Lot 2, Block 95 of the Town of Fairbanks, Alaska, according to the official map, plat and survey thereof.

The undisputed evidence showed that the defendants had not trespassed upon Lot 3, but had removed a fence placed upon Lot 2 and had built a fence on the dividing line between Lots 2 and 3.

Plaintiff did not attempt to show any paper title to Lots 2 or 3, but claimed to have purchased Lot 3 from an administrator of the estate of Henry Kortlitsky, deceased, in April, 1933. The administrator's deed was introduced in evidence. It purported to convey Lot 3 only, and did not mention Lot 2.

The plaintiff testified: That when she purchased said property from said administrator, the land described by metes and bounds, as above mentioned, was inclosed by a fence along the lines described by said metes and bounds, and a house had been built within said fence, all of which was shown by a map, Plaintiff's Exhibit "C"; that the fence and house remained at all times thereafter in the same place until the defendants tore down the part of the fence that was on the east side of said parcel of ground, in 1945; that she, plaintiff, at all times thought the grounds within said fence constituted said Lot 3, and after receiving said administrator's deed, she at all times claimed to be the owner of said parcel of ground.

There was no evidence that said administrator thought or represented to Mrs. Ringstad that the land within said fence constituted Lot 3.

The Court took the view that the administrator's deed did not constitute any color of title to Lot 2, but submitted to the jury the question of whether or not Mrs. Ringstad

had had adverse possession for 10 years, of the portion of Lot 2 within said metes and bounds description. A corner of Mrs. Ringstad's house projected over a few feet onto Lot 2, and the defendants concede that Mrs. Ringstad has had 10 years adverse possession of the land on Lot 2 covered by said corner, and that the judgment may be in her favor to that extent.

The plaintiff contended, and in a motion for a new trial continues the contention, that because she thought the portion of Lot 2 which was within said fence was a part of Lot 3, the administrator's deed conveying Lot 3 constituted color of title for said portion of Lot 2, and entitled her to the benefits of the provisions of Section 4313, Compiled Laws of Alaska, 1933 (hereinafter referred to as C.L.A.). That section provides:

"Sec. 4313. Title by adverse possession. The uninterrupted adverse notorious possession of real property under color and claim of title for seven years or more shall be conclusively presumed to give title thereto except as against the United States."

The general rule as to what constitutes color of title in support of adverse possession is set forth in 2 Corpus Juris Secundum, Adverse Possession, as follows:

Sec. 201, page 805: " * * * where it is based upon possession under color of title it is held that no greater title can be acquired than could be had under color of title itself if it were a valid instrument * * *".

Sec. 62, page 581: "Generally speaking, to be available as color of title an instrument should purport to convey title, legal or equitable, to claimant, to the land claimed and described, a sufficient description of the land for purposes of identification being essential."

Sec. 71b(2), page 588: "To serve as color of title supporting adverse possession an instrument must describe the property in question, and the description of the property must be sufficient to identify it, and must have the same

degree of certainty as is required in a deed relied upon as conveying title."

Sec. 72e(1), page 592: "To operate as color of title to land claimed under adverse possession, a deed must contain a sufficient description of such land."

Sec. 185, page 779: "Possession under color of title is measured primarily by the boundaries specified in the instrument which confers it and is coextensive therewith."

The general rule stated above is supported by scores of authorities and is so generally accepted that it does not seem necessary to here set forth the cases cited.

The plaintiff has cited a large number of cases, including the three Washington ones hereinafter mentioned in detail. A reading of the cases, however, discloses that only one case supports plaintiff's contention. That is Schlossmacher v. Beacon Place Co., 1909, 52 Wash. 588, 100 P. 1013. As this case is based entirely upon the case of Flint v. Long, 1895, 12 Wash. 342, 41 P. 49, that case will first be examined.

Flint v. Long, supra:

It is somewhat difficult to glean a clear understanding of the facts of this case from the opinion. A careful study of it, however, shows the following: The Wheelers, upon the 10th day of December, 1870, deeded 10 acres of land to John Lawler and Margaret Kollack as tenants in common. Upon April 10, 1882, Lawler and Kollack partitioned their land, Lawler receiving a deed correctly describing his part.

Lawler subsequently sub-divided his land into lots and blocks. Lots 5 and 6 of Block 4 were upon the ground owned by a neighbor. Said lots were staked upon the ground of said neighbor and Lawler went into the possession of the same, as staked. When he sold the lots, the purchaser viewed them upon the ground as staked, and both Lawler and the purchaser intended that the deed should pass title to the lots as staked upon the ground.

Lawler filed a plat of his sub-division, which did not show the lots 5 and 6 as staked upon the ground, but showed them to be upon Lawler's ground.

Page 50, column 2, of 41 P.: "* * * During the winter of 1882 and the early spring of 1883,—shortly after the purchase of these lots by Mrs. Malson,— * * * she employed a man to clear the same".

It was the deed from Lawler to Mrs. Malson in 1882 that constituted the color of title in this action, which was commenced August 10, 1893.

Middle of column 1, page 50 of 41 P.: "The land in question was purchased by the respondents, and the platting on file merely represented the lots as staked out upon the ground; and a deed to certain lots purporting to convey land actually staked out upon the face of the earth to correspond with the deed would certainly be a purchase, * * *".

The court held in effect that the Lawler deed purported to convey lots 5 and 6 as staked upon the ground, and that the grantees in the deed did not make any mistake in thinking that the deed purported to convey such lots as staked upon the ground. As respondents had had adverse possession of said lots as staked upon the ground under said deed from Lawler purporting to convey said lots as staked upon the ground, the court held that they had title under the 10 year statute. It is clear that the only reason the deed from Lawler to Mrs. Malson was not actual title was that Lawler, himself, did not have title to pass.

There was nothing in this case to warrant the belief that it intended to say that a person could erroneously believe a deed described land and thereby make it cover, as color of title, such land although it in fact did not describe such land.

In Hesser v. Siepmann, 1904, 35 Wash. 14, 76 P. 295, Mrs. Hesser had a deed for Lot 30, except the westerly 20 feet thereof. She and her grantor thought the excepted 20 feet lay in the street, and therefore they had taken possession up to the street line and held adverse possession for

more than 10 years. The court held (bottom of column 2, page 295 of 76 P.):

"There is no claim here that there was any actual paper title to the west 20 feet of lot 30, and section 5504, Ballinger's Annotated Codes and Statutes, upon which appellant relies, is to the effect that 'every person having color of title made in good faith to vacant and unoccupied land, who shall pay all taxes legally assessed thereon for seven successive years, he or she shall be deemed and adjudged to be the legal owner of said vacant and unoccupied land to the extent and according to the purport of his or her paper title' * * *. There being no paper title to ascertain the extent of in this case, it seems to us that the statutes have no application.

"But we think that the court erred in finding that appellant was not the owner of the land in controversy on the first ground claimed, viz., actual, open, notorious, and adverse possession for a period of more than 10 years."

" * * * we think there was sufficient to show actual, adverse, possession and improvements under claim of right." 76 P. on page 297.

As seen from the above, the question of color of title was not involved in the case, but merely the question of claim of right and adverse possession under the 10 year statute.

Schlossmacher v. Beacon Place Co., 52 Wash. 588, 100 P. 1013:

Schlossmacher had no title to the ground in controversy and had never had possession of it. He had a tax deed to ground north of the ground in controversy.

Beacon Place Company and its grantors had had adverse possession of the ground in controversy for 14 years, with all of the elements necessary to make title by 10 years adverse possession. The possession took in a portion of another's property. The defendant and its grantors thought the description in their deed included the land in controversy, but it did not.

Based upon the belief that the Flint v. Long case warranted considering the deed in this case to be color of title, the court so held.

It is believed that Flint v. Long is not authority for such holding. It is also clear that the case could have been decided upon the 10 year statute and that it was therefore unnecessary to decide whether or not the deed constituted color of title.

It should be noted that the Court did not consider the scores of cases establishing the general rule as to color of title. Nor did it consider the illogical results which necessarily flow from holding that an erroneous thought could extend the boundaries set forth in a deed to ground not therein described.

That 10 years adverse possession gave title in Washington, during all times involved in the Schlossmacher case, is shown by the following cases: Moore v. Brownfield 1893, 7 Wash. 23, 34 P. 199; Hesser v. Siepmann, supra; Blake v. Shriver, 1902, 27 Wash. 593, 68 P. 330; Delacey v. Commercial Trust Co. 1909, 51 Wash. 542, 99 P. 574, 130 Am.St.Rep. 1112; Thomas v. Spencer, 1912, 69 Wash. 433, 125 P. 361.

It should be noted that in the Washington cases cited, the grantor, as well as the grantee, thought the deed description included the ground in controversy, whereas in the Ringstad case, only the grantee so thought.

In the Schlossmacher case the court announces a doctrine not countenanced by any other court.

A decision contrary to that reached in the Schlossmacher case was arrived at in the following cases:

Williamson v. Tison, 99 Ga. 791, 26 S.E. 766, 767, where the Court said: "There would be no certainty under a rule that substituted a man's belief for what a deed shows. This belief would be often under the pressure of personal interest. Such a rule would be antagonistic to every principle of construction."

In Bendernagel v. Foret, 145 La. 115, 81 So. 869, the Court held as set forth in the syllabus: "It is not sufficient, to support a plea of prescription of 10 years, that the description in the deed relied upon might be construed to include the land in question; it being necessary that the deed relied upon is prima facie, not merely that the purchaser believed it to be, translative of the property in question * * *".

In McQueen v. Ahbe, 1925, 99 W.Va. 650, 130 S.E. 261, par. 2, page 262, the court held: "We are cited to no decision or authority advocating the enlargement of a *mere claim* beyond the boundary defined in the color. * * * In this case, the intention relied upon by the plaintiffs is the intention of the clerk, who acted ministerially, and who had no interest in the land. The grantor in a mere colorable instrument usually has little, if any, interest in the land he purports to convey. He ordinarily acts in hostility to the real owner. It would be farcical to permit the extent of the claim in a mere color to be enlarged, upon the intention of a grantor who, as an individual or representative of the law, is hostile to the owner and has no personal interest in the land to be affected."

In La Roche v. Falligant, 1908, 130 Ga. 596, 61 S.E. 465, the court said: "* * * and in the event possession is asserted to have been under color of title the actual limits described in the writing set up as color will not be extended to embrace other land not included in the writing, merely because such land lying beyond the limits described in the writing has been taken possession of under a mistake and occupied for over 7 years, though the party seeking to prescribe acted in good faith in extending his possession beyond the limits of the tract of land actually defined in his conveyance to contiguous land."

It seems clear that this Court would not be justified in following the Schlossmacher case in holding that the plaintiff's error of thought could make the administrator's deed cover and constitute color of title to a portion of Lot 2,

when the deed did not in fact mention Lot 2, but clearly purported to convey only Lot 3.

In the Court's instruction Number IV to the jury, it was stated that for plaintiff to prevail, she must prove an adverse possession of the property in controversy for 10 years under hostile claim of title, and that such possession must be (1) actual; (2) open; (3) notorious; (4) continuous; (5) uninterrupted; (6) exclusive; (7) visible.

The plaintiff excepted to this instruction, and especially to the 7th sub-division requiring such possession to be visible.

Although it is quite possible that the word "continuous" would include the word "uninterrupted", and that the word "open" would include the word "visible", it is believed the above instruction is in accordance with the great preponderance of authority upon the subject.

In 2 Corpus Juris Secundum, Adverse Possession, is found the following, to wit:

Sec. 41, page 554: "Unless, * * * the true owner has actual knowledge of the hostile claim, it is essential to the acquisition of title by prescription or adverse possession that the possession be open, visible, public, and notorious."

Sec. 45, page 558: "The true owner must have actual knowledge of the hostile claim or the possession must be so open, visible, and notorious as to raise a presumption of notice to, or knowledge by him of the adverse claim."

In Tyee Consolidated Mining Co. v. Langstedt 9 Cir., 121 F. 709, 2 Alaska Fed. 53, it was held that to get title by 10 years adverse possession the possession must be actual, open, notorious, continuous, exclusive and hostile.

In Sharon v. Tucker, 144 U.S. 533–541, 12 S.Ct. 720, 721, 36 L.Ed. 532, the court said, with reference to adverse possession: "It must be an open, visible, continuous, and exclusive possession, with a claim of ownership * * *".

In Stephenson v. Van Blokland, 1911, 60 Or. 247, 118 P. 1026, on page 1028 the court quoted Ewing's Lessee v.

404

Burnet, 11 Pet. 41, 51, 36 U.S. 41, 51, 9 L.Ed. 624, saying: "Adverse possession may best be defined as an actual, visible, and exclusive appropriation of land, commenced and continued under a claim of right  *  *  *".

In Joy v. Stump, 1887, 14 Or. 361, 12 P. 929, on page 930 the court said: "3. It is equally well settled that, when a person relies upon naked possession as the foundation for an adverse claim, there must be an actual occupancy,  *  *  *;  and such possession must not only be actual, but also visible, continuous, notorious, distinct, and hostile, and of such a character as to indicate exclusive ownership in the occupant."

■■■■■■■ After deliberating from 3:15 P.M. to 8:00 P.M., August 25, 1947, the jury requested a clarification of the words "open" and "exclusive", as used in the original instruction with reference to adverse possession.

At 8:30 P.M., the Court, in the absence of plaintiff's attorney, gave the following instruction:

"The jury is instructed:

"Open as used in the Court's instructions, means—not covered or concealed.

"Exclusive possession in plaintiff means possession by plaintiff which is not shared with anyone claiming adversely to plaintiff, but by plaintiff and those she has given permission to be there."

Apparently the foregoing instruction carried little weight with the jury, because at 12:15 A.M., August 26, 1947, the jury reported that it was unable to agree, but might be able, if further instructions were given it upon some questions. The Court directed the jury to retire and put in writing any question it wished further instruction upon.

At 12:30 A.M., the jury submitted the following questions, to wit:

"Instruction # IV.

"9. (a) That such possession was at all times *visible* to anyone in the immediate vicinity of said land.

*"Visible?*

"Does the corner markings with an imaginary line running straight between corners or must it be a visible fence?"

In the presence of the attorney for the plaintiff, the Court then instructed the jury as follows:

"The jury is instructed:

"Visible possession of a piece of ground exists only where there is some marking which may be seen that defines the limits of the possession. Corner markings with merely an imaginary line running straight between corners would not suffice to limit and define a possession of the land in controversy herein so as to make it a visible possession."

The plaintiff alleges that the giving of each of said instructions was error. Clearly, the definition of the words "open and exclusive" was correct. See 2 C.J.S., Adverse Possession § 43, page 557, 2 C.J.S., Adverse Possession, § 47, page 565. No doubt the Court should have waited for the presence of plaintiff's attorney, but if he had been present, all he could have done would have been to have excepted to the instruction. As Sec. 3637 C.L.A.'33 makes it unnecessary for an attorney to save an exception when something takes place in his absence, the plaintiff is not prejudiced, but has his exception by operation of law. Under Sec. 3461, C.L.A., the Court is required to disregard error unless it affects a substantial right. As no such right was affected by such instruction, it does not constitute a ground upon which the Court could be justified in granting a new trial.

The other instruction as to visible possession being required, it is also clearly a correct statement of the law.

In Johnston v. City of Albuquerque, 1903, 12 N.M. 20, 72 P. 9, it was held that a fence relied upon to establish adverse possession must be of a substantial character.

In Robin v. Brown, 1932, 308 Pa. 123, 162 A. 161, 162, the court said: "In the absence of an open and notorious actual use of land claimed by adverse possession, the claim-

ant must show that it was so substantially and visibly fenced in and the fence was so continuously and substantially maintained * * * as to amount to an assertion * * * of his exclusive private ownership of that area of the earth's surface. A fence which has the appearance of being neglected and abandoned and which is not even complete falls short of supporting an aggressive assertion of adverse ownership of the land within its lines."

2 C.J.S., Adverse Possession, § 43, page 557: "Open and visible possession contemplates the exercise of physical acts of ownership of such a character as openly and visibly to indicate to the community in which the land is situated that it is in the exclusive possession and enjoyment of claimant."

The other grounds set forth in the motion for a new trial are not well taken.

The motion should be denied.