### RABY v. HILL.
### No. A-4558.

District Court of Alaska. Third Division. Nome.
June 24, 1948.

————◆————

Davis & Renfrew, of Anchorage, for plaintiff.

McCutcheon & Nesbett, of Anchorage, and Robert J. McNealy, of Seldovia, for defendant.

KEHOE, District Judge.

This is an action to recover possession of real property described as Lot 3, Block One of Frank Raby Subdivision of Section Lots 2, 3, and 8 of Section 32, Township 8. South, Range 14, West of the Seward Meridian, within the incorporated Town of Seldovia, Alaska, and being part of the Fulmore Homestead, to which patent was issued November 21, 1930.

The plaintiff depends upon title by warranty deed from the patentee, dated November 20, 1945.

The defendant claims that he and his predecessors have occupied the land since 1920, adversely to the plaintiff.

John J. Roe, one of defendant's witnesses, testifies that he has lived in Seldovia since 1924 and that one Max Peyser then occupied the land in question and that prior to his occupancy, one Reynard occupied it. He identifies a bill of sale, dated January 6, 1925, from Max Peyser to Mrs. John Roe, his wife, covering a one-story frame building, 25' x 16', with addition in rear known as the Peyser Building, situated between the Anderson Mercantile Company's store and the store of M. E. Shortley, on the "beach line," and testifies that this instrument gave his wife the title which he (not his wife) on January 30, 1945 transferred by his bill of sale to the defendant. The description in this bill of sale is as follows:

"Certain personal property described as follows, to wit:

"My business known as the Polar Bar situate in the Town of Seldovia, Territory of Alaska, on the East side of Main Street and on the South side of Bay Street,' together with the furniture and fixtures, including the safe, in said building."

Later, on the 27th day of May, 1947, *and after the commencement of this action,* John J. Roe, by quit claim deed, transferred to the defendant:

"The building known as the Polar Bar, together with furniture and fixtures therein, and to supplement the bill of sale given January 30, 1945 to Hill, and conveying all of the right, title, color of title, interest and demand to the real property, on which said building is situated that First Party may have now or to which he may have been possessed, being more particularly described as follows:

"Commencing at Cor. No. 1 M. C. of U. S. Survey No. 1771 of the Original Townsite of Seldovia, approximately 76 feet along the Main Street in a Northwesterly direction to the point of beginning, designated as Cor. No. 1; thence approximately 42 feet in a Northwesterly direction along said Main Street to Cor. No. 2; thence approximately 52 feet in a Northeasterly direction to Cor. No. 3; thence 42 feet approximate, in a Southeasterly direction to Cor. No. 4; thence approximately 52 feet in a Southwesterly direction to point of beginning, including beach rights."

All evidence in the case makes it clear that the property described in the quit claim deed from Roe to Hill is Lot 3, Block One, of the Frank Raby Subdivision of Lots 2, 3 and 8 of Section 32, Township 8 South, Range 14, West of the Seward Meridian, the property from which the plaintiff seeks to eject the defendant.

The question to be decided is whether the occupation by the defendant and his predecessors in interest is such an adverse possession and so open, actual, continuous, notorious and hostile as to constitute title in the defendant against

the plaintiff whose immediate predecessor in interest was the patentee to the land.

The defendant came upon the property in 1941, paying rent therefor to the witness Roe until January 30, 1945, when he purchased it from Roe who gave him the bill of sale described above. He did not get a deed to the land itself until May 27, 1947, four days after this action was commenced.

The defendant then has occupied the land for less than the statutory period (sec. 4313, Compiled Laws of Alaska, 1933), so if he is to prevail in his claim of title by adverse possession, he must depend upon the adverse possession of the witness Roe, who preceded him in occupation.

Roe testifies that he and his wife occupied the land since 1925 and that he succeeded her after her death in 1941 until he rented it to the defendant. Roe also testifies that he and his wife paid rental to the patentee for another piece of land adjacent to the land in question for many years; that he heard the land had been patented in 1930 and that he consulted an attorney about it in 1934; that the patentee requested rentals for the land and that he refused to pay; that in 1941 he rented the land to the defendant; that on January 3, 1945, he gave the defendant a bill of sale to the buildings on the land and that he did not give the defendant a deed to the land until after the action was commenced.

The evidence also shows that Roe's predecessors did not transfer the land to their successors by deed, but that each of them gave bills of sale to the buildings thereon.

The evidence further shows that Roe occupied adjacent property, paid rental thereon to the patentee and acknowledged patentee's title thereto; that his wife also acknowledged title in the patentee. This acquiescence on the part of Roes extended over a long period of years and continued until 1941, when Roe rented the land in question to the defendant.

While it seems clear that the tacking of successive possessions are sufficient to constitute one continuous ad-

verse possession for the statutory period, the mere naked continuance in possession over a long period by several persons will not constitute title by adverse possession, unless that title is under color or claim of title during the entire period. Our Statute (Sec. 4313, C.L.A.1933) reads as follows:

"Sec. 4313. The uninterrupted adverse notorious possession of real property under color and claim of title for seven years or more shall be conclusively presumed to give title thereto except as against the United States."

In this case, it appears that, beginning with one Peyser who is said to have been on the land in question prior to 1924 and through 1941 when the testimony shows Mrs. John J. Roe died, each person who lived on the land attempted to transfer his rights thereto by bill of sale. Each bill of sale described personal property only and each purported to transfer personal property only and none of them described land so that it could be determined precisely what land was attempted to be transferred.

To be effective as color of title, an instrument must purport to convey the land involved in the action. 1 Am. Jur. Sec. 203, page 906.

This none of the transfers in evidence here does. Hence, the adverse possession in this case cannot be predicated upon color of title. The only color of title acquired so far as the evidence in this case is concerned is that acquired by John J. Roe from his wife whose estate descended to him upon her death in 1941, and this comes too late, since the action was commenced within seven years of that date; also it must not be overlooked in construing the descent cast upon John J. Roe from his wife as a color of title sufficient to start the running of the Statute that John J. Roe knew from the beginning of his wife's occupation of the land that she had no color of title and he participated in her trespass until her death. To permit him now to invoke the Statute under color of title by descent cast would be to justify his own trespass and hers.

[4] . The patent to the land (including that involved in this action) was issued on November 21, 1930, and was recorded May 23, 1932. On November 21, 1930, the patentee became seized of the land. On that date, John J. Roe and his wife were on the land, had been there since 1925 and, according to Roe, remained thereon until the Roes rented it to the defendant in 1941. Roe and his wife were precluded from commencing their adverse possession against the patentee until after the patent issued. Valentine v. McGrath, 4 Alaska 102–115.

Evidence of occupancies prior to the patent are of no avail to them or their successor, the defendant.

John J. Roe and his wife paid rent to the patentee for adjoining land and offered to act as her agent in the collecting of rent from other tenants to the homestead. The patentee resided out of the Territory and for many years the Roes carried on a correspondence with her regarding the homestead lands and when Roe sold to the defendant, he did so by simple bill of sale to the personalty without mention or description of the land. As late as 1944 Roe wrote a letter to the Patentee's attorney in which he claimed the land in question as "Government land." Such a holding is not hostile to the true record owner.

In Jasperson v. Scharnikow, 9 Cir., 150 F. 571, 573, 15 L.R.A.,N.S., 1178, Judge Gilbert cites Yesler Estate v. Holmes, 39 Wash. 34, 80 P. 851, to show that adverse possession, to work a disseisin of the true owner, must be under a claim or right or color of title; that an entry upon the lands of another under a mistaken, though honest, belief that the same were public lands subject to entry, would not work a disseisin of the true owner, stating:

"It is the doctrine of these decisions, and it is the generally accepted doctrine, that a mere squatter can never obtain title by possession; that, to constitute adverse possession under claim of title, the claim must be a distinct claim of title, and not a general assertion of ownership, connected with no source from which it is claimed to be deraigned."

 Altogether, the evidence fails to show that Roe had a claim of right to any specific land.

It follows that the defendant cannot base his right to the land in question upon any claim of title of John J. Roe.

Judgment for the plaintiff with costs, but without damages.

It was agreed in open court at the trial and argument of the cause that the plaintiff, if successful, would not demand the buildings on the land now occupied by the defendant. It seems equitable, therefor, that he be granted a reasonable time in which to remove them, and the Court is of the opinion that three months from the date of the Judgment herein is such reasonable time for their removal. The Judgment may contain such a stipulation.