William W. KARVONEN, Appellant,

v.

John DYER, Appellee.

No. 15534.

United States Court of Appeals
Ninth Circuit.

Aug. 11, 1958.

Bell, Sanders & Tallman, Anchorage, Alaska, for appellant.

Peter J. Kalamarides, Anchorage, Alaska, for appellee.

Before FEE and CHAMBERS, Circuit Judges, and JAMES M. CARTER, District Judge.

JAMES ALGER FEE, Circuit Judge.

This is an action to quiet title and for recovery of real property, which Karvonen claims to own by adverse possession but record title to which is vested in Dyer. A complaint was filed consisting of two causes of action. The answer contained denials, an affirmative defense and a counterclaim.

The case was tried to the judge sitting with a jury. At the close of the evidence presented by Karvonen, the judge

directed a verdict for Dyer on the two causes of action in the complaint and for Karvonen on the counterclaim.

The genesis of the controversy can be shortly stated. The area embraced by Lots Fourteen and Fifteen was all in ownership of John Wik after August 11, 1945 until the first sale set out below. While in common ownership, there were some structures and part of the main residence which were on Lot Fifteen as presently described, although the main portion of the dwelling house was on Lot Fourteen.

John Wik conveyed Lot Fourteen to Gordon L. May on December 17, 1945, by warranty deed. At the time May took title by deed to Lot Fourteen, he not only took possession of the lot so described, but also of the house thereon, which encroached upon Lot Fifteen, and other buildings on the latter lot which was still in ownership and possession of John Wik.

Subsequently, by warranty deed, May deeded Lot Fourteen to Karvonen, appellant here, on June 18, 1947, and the latter took possession not only of that lot, but also of the encroaching house and other buildings on Lot Fifteen.

John Wik, by deed, conveyed Lot Fifteen to George R. Smith and Lucia T. Smith on February 14, 1949. The Smiths did not attempt to take possession of the portion of the house and the other buildings which encroached upon the lot deeded to them. The Smiths deeded Lot Fifteen to John Dyer on September 28, 1951, who rolled a building used by Karvonen off the land in controversy, sawed two and one-half feet off the porch of the encroaching house and erected a fence on the true line between Lots Fourteen and Fifteen about

ten days before action was commenced on August 19, 1953.

The plat of the subdivision wherein the lots in question are located showed Lot Fourteen to be 60.53 feet wide in front and 26.86 feet wide in back.[1] Karvonen claims to have occupied a triangle extending 20 feet beyond the true line at the back and running to the true corner in front. The first claim is under § 55–2–2, A.C.L.A.1949, which reads:

"The periods prescribed in section 55–2–1 of this article for the commencement of actions shall be as follows:

"Within ten years actions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it shall appear that the plaintiff, his ancestor, predecessor, or grantor was seized or possessed of the premises in question within ten years before the commencement of the action."

It is obvious this claim cannot be maintained. The two lots in question were in common ownership of John Wik until December 17, 1945. The action of an owner on his own land does not start the running of adverse possession. A cause of action for trespass arose in Wik when May began to use portions of Lot Fifteen when Lot Fourteen alone had been conveyed on December 17, 1945. But the period since the time of conveyance to the commencement of this action was only about seven years and eight months. Therefore, the ten years required by the statute has not expired. This result requires no discussion.

The other claim is based upon § 58–7–6, A.C.L.A.1949, which reads:

---

1. Lot Fourteen is described in the deed of Karvonen, and the prior deeds through which he traces his title, as: "Lot Fourteen (14) in Block Six (6) of the Chester Subdivision in Lots five, six and seven of Section 24, Township 13 North, Range 4 West, Seward Meridian, Alaska, according to the revised plat of such

Chester Subdivision revised and compiled on April 15, 1942, by A. H. Curtis, which map or plat is on file and of record in the office of the United States Commissioner and ex-officio Recorder for the Anchorage Precinct, Alaska, at Anchorage, Alaska."

"The uninterrupted adverse notorious possession of real property under color and claim of title for seven years or more shall be conclusively presumed to give title thereto except as against the United States."

Undoubtedly, Karvonen and his predecessor, after the conveyance by Wik, had, according to the evidence, held uninterrupted, adverse and notorious possession of this triangle of real property under claim of title for about seven years and eight months. But that showing alone is not sufficient to prevail.

In Alaska, as in many other jurisdictions, the statutes contain two different periods of limitation whereby title can be acquired by adverse possession. The first method has already been disposed of. In order to acquire title by adverse possession in the shorter period, the Alaska statute requires as a condition precedent that the adverse claimant have color of title.[2] This formalistic requisite must be present or the claimant must show that he has fulfilled ten years of adverse possession.

"Color of title" exists only by virtue of a written instrument.[3] It results from the possession of some document which purports to pass title to the claimant, but, because perhaps of the employment of a means of conveyance which is ineffective or, on the other hand, because the supposed grantor did not have title, it is actually ineffective for that purpose.[4] The supposed conveyance must describe accurately on its face and purport to convey the exact parcel of land.[5]

Karvonen had no such deed. His conveyance described Lot Fourteen, and the subdivision plat referred to in the description showed this lot to have certain boundaries. There is no substance to the claim that, because John Wik thought Lot Fourteen contained this disputed triangle and acquiesced in possession thereof by his grantee, May, and because May and Karvonen, and perhaps the Smiths, acquiesced in this possession, there was color of title in either May or Karvonen.

"Color of title" is a phrase of art, and its technical meaning cannot be supplied by substitution of other factors which may appear to the claimant to be just as good.[6]

The judgment of the District Court, based upon the verdicts directed against Karvonen on each of the two causes of action and against Dyer on the counterclaim, was correct.

Affirmed.

2. "The apparent difference between the two statutes [A.C.L.A.1949, §§ 55-2-2 and 58-7-6] is that the latter requires the adverse possession to be founded upon color as well as claim of title." Pacific Coal & Transportation Co. v. Pioneer Mining Co., 9 Cir., 205 F. 577, 590.

3. See Ringstad v. Grannis, 11 Alaska 393, 397–398, reversed on other grounds 9 Cir., 171 F.2d 170.

4. "Color of title is that which purports to be title, but is no title. It is not title, but only the semblance of title. It must be in form a conveyance of title. One cannot make his own title." Pacific Coast Co. v. James, 5 Alaska 180, affirmed 9 Cir., 234 F. 595.

5. "A deed is color of title only as to the land actually described in it." Archer v. Beihl, 9 Cir., 136 F. 113, 118.
"To be effective as color of title, an instrument must purport to convey the land involved in the action." Raby v. Hill, 11 Alaska 600.
"There must be at least a descriptive word in the written instrument relied upon as color of title which furnishes the key to the identity [of the boundaries of the property claimed]." Green v. Trumbull, 37 New Mexico 604, 26 P.2d 1079, 1080.

6. "One cannot make his own title." Pacific Coast Co. v. James, 5 Alaska 180, affirmed 9 Cir., 234 F.2d 595.